**In re Eva June COST, SS # 135–16–5973, Debtor.**

**Bankruptcy No. 90–17434–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

Dec. 14, 1993.

Sandy E. Karlan, and Lynn H. Gelman, Miami, FL, for debtor.

Grisel Alonso, U.S. Attorney's Office, Miami, FL, for Social Sec. Admin.

### MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

Ms. Eva June Cost, Debtor, seeks leave of Court to reopen this case for a determination that the Social Security Administration has willfully violated § 524(a)(2) of the Bankruptcy Code by withholding her monthly social security benefits. She requests an order directing: (i) the resumption of social security payments to the Debtor; (ii) the return of improperly withheld payments; and (iii) an award of sanctions to the Debtor in the form of attorney's fees and costs.

The Court conducted an evidentiary hearing on August 26, 1993. After considering the exhibits admitted into evidence, the testimony of Mrs. Cost and the arguments of counsel, the Court announced its ruling granting Debtor's motion. This Memorandum Opinion incorporates and supersedes the findings and conclusions announced on the record that day.

### FACTUAL BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 7 on October 15, 1990. The Social Security Administration ("SSA") was listed as a creditor and served with the standard notice and order scheduling the § 341(a) Meeting and setting a deadline of January 21, 1991 for the filing of complaints objecting to the dischargeability of debts pursuant to 11 U.S.C. § 523. The SSA did not file a proof of claim. The Debtor received her discharge on January 29, 1991.

The Debtor, a widow, worked as a sales clerk in a department store in order to supplement her income, which otherwise consisted solely of social security widow's benefits. In 1990, the Debtor worked until October but was then taken ill. She did not work after October 1990. Other than disability payments, she received no further income after October 1990.

Both before the Debtor filed her petition and during the pendency of the case, the SSA at various times withheld Debtor's monthly benefit payments to recoup alleged overpayments. While the bankruptcy was pending, the SSA resumed payments upon Debtor's filing of a motion for contempt for violating the automatic stay. After completion of the bankruptcy case, the SSA again began withholding benefits in order to recover overpayments made to the Debtor prior to filing. The Debtor, through administrative procedures, succeeded in having her payments reinstated.

On August 20, 1992, the SSA advised the Debtor that she had received an overpayment for the year 1990 in the amount of $2,465.60, and on November 6, 1992 she was advised of her right to appeal that decision. The SSA asserted that the overpayment for 1990 had not been discharged by the bankruptcy, and began in July, 1993 to withhold the Debtor's entire social security check to recover the alleged overpayment. The instant motion was filed in response to the SSA's action.

## DISCUSSION

■ A debt arising from the prepetition overpayment of social security benefits is dischargeable in bankruptcy. *Rowan v. Morgan,* 747 F.2d 1052 (6th Cir.1984); *Matter of Neavear,* 674 F.2d 1201 (7th Cir.1982); *In re Carey,* 36 B.R. 194 (Bankr.D.Kan.1983); *Matter of Hawley,* 23 B.R. 236 (Bankr. E.D.Mich.1982). The SSA argues that its claim arose postpetition and therefore was not discharged. In support, the SSA asserts that overpayments are based upon income calculated over a calendar year period which had not elapsed at the time of the order for

relief, and that the overpayment was not actually calculated until January 1992. The Court disagrees. A claim, as defined in 11 U.S.C. § 101(5), includes a contingent or unliquidated right to payment. All or virtually all of the Debtor's 1990 earnings were earned prior to the October 15, 1990 filing of her chapter 7 petition. Since the government's claim arose from prepetition earnings of the Debtor, the claim is a prepetition claim. The contingent or unliquidated nature of the claim at the time of filing does not convert it from prepetition to postpetition status. As a prepetition claim, the SSA's claim to recover 1990 overpayments was discharged.

■ Next, the government argues that this Court is without jurisdiction to impose a monetary judgement in the form of a return of improperly withheld social security benefits because the government has not waived its sovereign immunity pursuant to 11 U.S.C. § 106.[1] The SSA relies on *United States v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) for this assertion. The Supreme Court in *Nordic Village* held that § 106(c) does not "unambiguously" waive sovereign immunity for monetary claims.

The Court finds that *Nordic Village* does not apply to the SSA's action in this case. *Nordic Village* involved a suit against the government to recover a money judgment. This case involves a request for sanctions against the government for attempting to collect a discharged debt. This Court agrees with the reasoning and findings of *In re Moulton,* 146 B.R. 495 (Bankr.M.D.Fla.1992), which held that sovereign immunity does not protect the government from an action seeking sanctions for violation of the permanent injunction in § 524(a)(2).[2] In *Moulton,*

1. Section 106 provides:

   (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
   (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

   (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
   (1) a provision of this title that contains "creditor", or "entity", or "governmental unit" applies to governmental units; and
   (2) a determination of the court of an issue arising under such a provision binds governmental units.

2. Section 524(a)(2) provides:
   (a) A discharge in a case under this title—
   (2) operates as an injunction against the commencement or continuation of an action, the

Judge Paskay considered whether § 106(c) renders § 524 applicable to and binding on the government. Section 106(c) overrides any claim of sovereign immunity for code sections using the term "creditor," "entity" or "governmental unit". As explained by the court:

> Section 524 admittedly does not use the trigger words "creditor", "entity", or "governmental unit". Notwithstanding, a sensible reading of § 524(a)(2) should not leave any doubt that it applies to all "creditors", including the Government. If the Government is a creditor, clearly then the Government is bound by the protection provided by the general bankruptcy discharge.

*Moulton,* 146 B.R. at 497–98.

This principle has clear support in the Bankruptcy Code. Section 524 applies to actions taken to collect or recover a "debt." The Code defines "debt" to mean "liability on a claim." 11 U.S.C. § 101(12). A "creditor" is defined as an "entity that has a claim." 11 U.S.C. § 101(10). By the definitions of the relevant terms, § 524(a)(2) necessarily applies to a "creditor" and thus § 106(c) overrides a claim of sovereign immunity.

The SSA attempts to distinguish *Moulton* on the basis that the governmental agency (the IRS) had filed a proof of claim in that case, whereas here the SSA did not file a proof of claim. This is a distinction without a difference—what matters is whether the governmental unit is a creditor of the debtor. A contrary ruling would allow the government to avoid discharge of a prepetition debt merely by not filing a proof of claim.

■ Exempting governmental creditors from discharge, or rendering courts power-

less to impose sanctions for violations of the permanent injunction by governmental agencies, would make § 524(a)(2) and the "fresh start" it contemplates meaningless. Thus, the court finds that, pursuant to 11 U.S.C. § 106(c), sovereign immunity is waived for the purpose of imposing sanctions for willful violations of § 524(a)(2). The court further finds that the SSA willfully [3] violated the § 524(a)(2) permanent injunction by withholding the Debtor's social security benefits to recoup prepetition overpayments, and that the SSA's willful violation justifies the imposition of sanctions.

**RELIEF**

The SSA's willful violation of the Bankruptcy Code's injunction against collection of discharged debts justifies sanctions in the amount of the withheld July, 1993 payment plus attorney's fees and costs. Since the matter is before the Court on motion, not adversary complaint, the Court cannot entertain injunctive relief prohibiting the SSA from withholding future payments. Any such conduct, of course, would result in further sanctions. To alleviate any appellate concerns of the SSA, the Court specifically finds that resumption of payments will not constitute a waiver of the SSA's right to seek rehearing of or to appeal the Court's ruling.

A separate order will be entered consistent with this opinion.

---

employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

**3.** The term "willful" is used not to connote bad faith on the part of the SSA, but rather to mean

that the SSA's action in withholding payments was voluntary and intentional. *See generally, Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988).