*In re Kalikow Real Estate*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2009

Docket Nos. 08-5268-bk(L); 08-5274-bk (CON)

Argued: October 29, 2009                                    Decided: April 8, 2010

———————————————————————————————

IN RE: PETER S. KALIKOW and KALIKOW REAL ESTATE CO.,

*Debtors.*

———————————————————————————————

SHELDON H. SOLOW, STEVEN M. CHERNIAK,
EVERGENCE CAPITAL ADVISORS, INC., and SHEILA M. GOWAN,
CHAPTER 11 TRUSTEE OF DREIER LLP, et al.,

*Appellants,*

- v.-

PETER S. KALIKOW and KALIKOW REAL ESTATE Co.,

*Appellees.*

———————————————————————————————

Before: MINER, RAGGI, and HALL, <u>Circuit Judges</u>.

Appeal from a judgment entered on September 30, 2008, in the United States District Court for the Southern District of New York (Batts, <u>J.</u>), affirming orders entered on June 21, 2004, and October 14, 2004, in the United States Bankruptcy Court for the Southern District of New York (Lifland, <u>B.J.</u>) that granted former-debtors appellees' motion to reopen Chapter 11 proceedings, impose sanctions against appellants, and award costs and fees to appellees, the District Court having found that the Bankruptcy Court (1) did not err in proceeding by motion instead of an adversary proceeding; (2) had personal jurisdiction over appellants who were not initially named in appellees' motion; and (3) did not abuse its discretion in imposing sanctions against appellants.

Affirmed in part; vacated in part and remanded with instructions.

DAVID M. GOSSETT, Richard Ben-Veniste, Mayer
Brown LLP, Washington, D.C., <u>for Appellants</u>

Sheldon H. Solow and Steven M. Cherniak

Joan M. Secofsky, Howard D. Ressler, Diamond McCarthy LLP, New York, NY, for Appellants Evergence Capital Advisors, Inc., and Sheila M. Gowen, Chapter 11 Trustee of Dreier LLP

RANDY M. MASTRO, Gibson Dunn & Crutcher LLP, New York, NY, for Appellees Peter S. Kalikow and Kalikow Real Estate Co.

MINER, Circuit Judge:

Appellants, Sheldon Solow ("Solow"), Steven Cherniak ("Cherniak"), Evergence Capital Advisors, Inc. ("Evergence"), the law firm of Dreier LLP,[1] Marc S. Dreier, and Kosta Kovachev (collectively, the "Appellants"),[2] appeal from a judgment entered on September 30, 2008, in the United States District Court for the Southern District of New York (Batts, J.), affirming orders entered on June 21, 2004, and October 14, 2004, in the United States Bankruptcy Court for the Southern District of New York (Lifland, B.J.).  The Bankruptcy Court's order of June 21, 2004, granted (1) the motion of debtors-appellees, Peter S. Kalikow and Kalikow Real Estate Co. (together, "Kalikow"), to reopen Chapter 11 proceedings, pursuant to 11 U.S.C. § 350 (the "350 Motion"); and (2) the motion of Kalikow seeking an order, pursuant to 11 U.S.C. §§ 105, 524, 1141, as against Evergence and against its "controlling persons[] and agents," including the law firm of Dreier LLP, to enforce the release, discharge, and injunction provisions of Kalikow's plan of reorganization (the "Plan") set forth in the Bankruptcy Court's Confirmation Order of January 27, 1994 (the "Enforcement Motion").  The Bankruptcy Court's order of October 14, 2004, granted

---

[1]  Sheila McGowan, as Chapter 11 Trustee for Dreier LLP, has been substituted in place of the original appellant Dreier LLP.

[2]  Only appellants Solow and Cherniak submitted briefs to this Court.  By letter dated August 18, 2009, Sheila McGowan joined in all arguments relevant to Dreier, LLP.

2

"costs and expenses, including, without limitation, attorneys' fees and expenses," incurred up to September 28, 2004, in connection with the Enforcement Motion. The total amount of the award set forth in the October 14, 2004 order was $334,583.12.

On appeal, the District Court affirmed the judgment and orders of the Bankruptcy Court, holding that: (1) the Bankruptcy Court correctly found that it had the authority to conduct the post-confirmation proceedings by motion, rather than by an adversary proceeding, because Kalikow sought to enforce the pre-existing injunction and provisions of the Plan and Confirmation Order, pursuant to 11 U.S.C. §§ 524(a)(2), 1141; (2) the Bankruptcy Court properly found that personal jurisdiction existed as to Solow and Cherniak because, although they were not initially named in Kalikow's motions, they had intentionally attempted to conceal their identities during the proceedings in the Bankruptcy Court; and (3) the Bankruptcy Court did not abuse its discretion in imposing sanctions against the Appellants because that court "possessed ample evidence of damages" and "clearly provided the basis for imposing sanctions against Appellants by specifically noting that the notices posted by them . . . violated the Confirmation Order . . . [and] that the Appellants had acted in bad faith, with no legitimate purpose for their conduct."

For the reasons that follow, we affirm the judgment of the District Court in all respects except its imposition of sanctions upon the Appellants, pursuant to 11 U.S.C. §§ 524(a)(2), 1141, for violating the injunction provisions of the Plan and Confirmation Order. We affirm the judgment of the District Court in all other respects.

**BACKGROUND**

I. Bankruptcy Court Proceedings

This appeal arises from Chapter 11 bankruptcy proceedings commenced by Kalikow on August 21, 1991, in the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court"). On December 21, 1993, Kalikow filed a plan of reorganization. The Plan vested Kalikow with the property of the estate, free from creditors' interests, and discharged Kalikow from "any Claim and any 'debt' . . . that [arose] before the Effective Date." In particular, "every holder of a discharged Claim" was "precluded from asserting against [Kalikow] . . . any further Claim based on any document, instrument or act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date."

The Bankruptcy Court confirmed the Plan pursuant to a Confirmation Order dated January 27, 1994. The Confirmation Order:

    (1) made "the Plan and its provisions . . . binding upon the Debtors . . . and any holder of a claim against or interest in the Debtors."

    (2) relieved Kalikow of all "liability to any holder of a Claim for any . . . activity . . . arising out of . . . the confirmation."

    (3) operated "as a discharge . . . as to each holder of a Claim," relieving the debtors "from all debts that arose against them prior to or on the Effective Date."

    (4) precluded any creditor holding a "discharged debt . . . from asserting against the Debtors, . . . any other or further Claim" based upon activity "prior to the Effective Date."

    (5) "restrained and enjoined" all "creditors . . . whose claims are discharged" from "employing any process or any act to collect, recover, or offset such debts," except as provided in the Plan.

The Confirmation Order also preserved creditors' claims for liability created by the express terms of any agreement or other document executed and delivered by Kalikow in connection with implementation of the Plan.

As part of the Plan, Kalikow was required to submit to the Bankruptcy Court a representation letter (the "Representation Letter") that would provide unsecured creditors assurance that Kalikow had made a full disclosure of their assets. Kalikow submitted such a letter on February 17, 1994. The Representation Letter reserved to the Plan Administrator an enforcement mechanism

4

in the event of a breach by Kalikow. It authorized the Plan's Administrator, on behalf of creditors, to pursue a post-confirmation claim "as a result of a misrepresentation or breach of the representations and warranties set forth [in the Representation Letter]" up to ten years from the Plan's effective date — i.e., until February 17, 2004. This provision of the Representation Letter was incorporated into section 4.6 of the Plan Administrator Agreement, which stated that "[e]xcept as expressly provided . . . in this Section 4.6 [of the Plan Administrator Agreement], no person other than the Plan Administrator shall have authority to commence any legal action or otherwise pursue any right or remedy with respect to any misrepresentation or breach of warranty under the Kalikow Representation Letter." Should the Plan Administrator decline to pursue such a claim, section 4.6 of the Plan Administrator Agreement authorized an unsecured creditor to seek the court's permission to pursue a post-confirmation claim as described in the Representation Letter.[3]

In February 1994, a few weeks after the Confirmation Order had issued, Solow provided Kalikow with a $7 million loan and received in exchange an option to buy an interest in Kalikow's reorganized business. Kalikow repaid that loan in June 1994 — more than five years earlier than it was due. Kalikow then repurchased the purchase-option from Solow for $2 million in 1995. The rapid repayment of the loan and repurchase of the option caused Solow to speculate that Kalikow had concealed a portion of their assets from creditors. Solow never produced any evidence to support that speculation. In 1997, Solow moved in the Bankruptcy Court for the appointment of an examiner to investigate Kalikow's representations. By this time, the bankruptcy cases were closed.

---

[3] The Plan Administrator Agreement provides that upon a determination by the Bankruptcy Court, "following notice to all parties in interest, including [Kalikow], and a hearing, that the Plan Administrator has unreasonably refused or failed to pursue any right or remedy . . . after receiving written request to do so from the holder of an [unsecured] [c]laim, then the [Bankruptcy] Court may authorize such holder to pursue such right and remedy on behalf of all of the holders of [unsecured] [c]laims."

5

The Plan Administrator had been discharged on December 26, 1995. Kalikow opposed the motion, arguing that Solow lacked standing to bring it as "a post-confirmation lender who has been paid in full." The motion was denied.

Approximately seven years after Solow's motion was denied, as the ten-year period for post-confirmation claims was about to expire, Solow and Cherniak[4] consulted Dreier LLP with respect to the approaching claims deadline of February 17, 2004. At that time, Marc Dreier ("Dreier") of Dreier LLP contacted Evergence, a defunct Florida Corporation, and Kovachev, Evergence's owner, to front as the contact for notices (the "Notices") to apprise unsecured creditors "under the 1994 Chapter 11 Plan of Reorganization of Debtors Peter S. Kalikow and Kalikow Real Estate Co" of possible claims. The Notices contained a list of creditors of the estates, some listed with the amounts of their claims, followed by the statement: "You may have additional rights of recovery based on a failure by the debtors to make truthful disclosure. The deadline for your pursuing additional recovery is February 17, 2004. All interested creditors should contact the undersigned." The Notices bore the name of Evergence, and provided phone and fax numbers; however, these numbers were associated with a telephone and fax machine on the premises of Dreier LLP. After the publication of the Notices on February 9 and 12, 2004, in The New York Times and the New York Post,[5] a number of listed creditors attempted to contact Evergence, either individually or by counsel. In response to the Notices, there were eighteen letters (from former creditors or their counsel) faxed to the fax number provided, and there were sixty-five telephone calls (from fifty-nine

[4] Cherniak was the Chief Operating Officer of the Solow Development Corporation.

[5] The Notices appearing in the New York Post were printed as "Legal Notice" and had the following heading: "THIS IS A NOTICE TO ALL UNSECURED CREDITORS UNDER THE 1994 CHAPTER 11 PLAN OF REORGANIZATION OF DEBTORS PETER S. KALIKOW AND KALIKOW REAL ESTATE CO." Solow paid more than $70,000 in advertising costs for the placement of the Notices in The New York Times and the New York Post.

separate numbers) made to the number provided. The law firm of Bingham McCutchen prepared for its client, 1001 Fifth Avenue Owners, Inc, and faxed to the number provided, a proof of claim for submission to the Bankruptcy Court. NFS Services, Inc. also submitted a letter of authority to collect on behalf of its client, Lehman Brothers Holdings, Inc. However, no creditor submitted a claim to the Bankruptcy Court or Plan Administrator, or attempted to recover from Kalikow directly.

In response to the Notices, on April 14, 2004, Kalikow filed the 350 Motion seeking an order pursuant to 11 U.S.C. § 350 to reopen Kalikow's "substantively consolidated bankruptcy cases." On April 20, 2004, Kalikow filed the Enforcement Motion, pursuant to 11 U.S.C. §§ 105, 524, 1141, seeking "to enforc[e] the release, discharge, and injunction provisions of the Plan and Confirmation Order." The Enforcement Motion was directed against "Evergence Capital Advisors, Inc., and its directors, officers, controlling persons, and agents, including the law firm of Dreier LLP."[6] The motion identified Evergence as a defunct Florida corporation, dissolved on October 4, 2002. Kosta Kovachev was identified as the president of Evergence.[7] Kalikow alleged in the Enforcement Motion that the Notices had been placed in bad faith, had been designed to appear as if ordered by a court, had created confusion among creditors, and had injured Kalikow's reputation. The Enforcement Motion sought an order (1) enjoining publication of the Notices pursuant to the Plan, the Confirmation Order, and 11 U.S.C. §§ 524, 1141; (2) directing Evergence to cease and desist from "engaging in any further such actions"; (3) requiring Evergence to publish corrective

[6] In addition to Evergence and Dreier LLP, notice of the Enforcement Motion was given to the Office of the Untied States Trustee for the Southern District of New York and counsel to the Plan Administrator.

[7] According to the Enforcement Motion, the Securities and Exchange Commission filed a civil complaint against Kovachev and several other individuals in November 2003 for allegedly running a $28 million "Ponzi scheme."

notice of the same size, placement, and frequency in the same publications; and (4) imposing sanctions on Evergence in the amount of Kalikow's costs and attorneys' fees related to investigating and responding to the Notices.

On May 6, 2004, Kalikow deposed Marc S. Dreier at the offices of Dreier LLP to discover any information Dreier might have regarding the Notices. At that time, Dreier declined to name the clients who had contacted Dreier LLP with regard to the post-confirmation claims, citing attorney-client privilege. Sometime thereafter, the Bankruptcy Court held a conference in chambers and compelled disclosure. When the deposition resumed on May 28, 2004, Dreier named Solow and Cherniak as the firm's clients.

On June 7, 2004, Dreier LLP filed an objection to the Enforcement Motion on behalf of Solow and Cherniak, claiming that Kalikow's motions had "sought no relief against [them]." The objection disputed Kalikow's allegations of bad faith, arguing that the Notices had been placed in order to alert creditors, before the deadline expired, to the possibility of post-confirmation claims based on Kalikow's misrepresentations. The objection also argued that the Bankruptcy Court lacked subject matter jurisdiction, that the dispute should be heard by a formal adversary proceeding, and that there was no legal basis for relief. Kalikow filed a reply on June 9, 2004, stating that relief would be sought against Dreier individually, as well as against Solow and Cherniak.

At a hearing on June 10, 2004, in the Bankruptcy Court, the court granted Kalikow's motions. The Bankruptcy Court found that the Notices "implicate[d]" the injunctive provisions of the Plan and Confirmation Order. The court considered, inter alia, (1) the timing of the Appellants' actions in placing the advertisements nine years after Kalikow repaid Solow and repurchased the option, and seven years after Solow's motion to appoint an examiner was denied; (2) the choice to publish the Notices in two of New York's most widely-read newspapers as a method of contacting

8

creditors — whose addresses and contact information could have been easily obtained — when mailing the information would have been significantly less expensive; (3) the Notices had "the appearance of legal notices that are published at the direction of this Court"; and (4) "[t]he [N]otices were designed to mislead the public into thinking that they have a right to reassert discharged claims." The court also found that none of the Appellants was a former unsecured creditor of Kalikow. The court concluded that the Notices had not been placed in good faith and rejected the argument that, because no creditor had attempted to collect a discharged claim, the injunction had not been violated. As to the injunctive relief requested by Kalikow, the Bankruptcy Court declined to grant this request, stating that because "no creditors took the [respondents'] bait beyond retention of counsel and inquiry at their expense," the requested injunctive relief would "serve[] no basic purpose at this point in time." Instead, the court awarded "the recovery of costs incurred in investigating and bringing on this process," with other forms of relief "more appropriately addressed . . . in other non-bankruptcy proceedings."

On June 21, 2004, the Bankruptcy Court issued a written order (the "First Order") restating its oral ruling of June 10, 2004. The First Order imposed sanctions on "Evergence Capital Advisors, Inc. and its directors, officers, controlling persons, and agents, including the law firm of Dreier LLP," and "Solow, . . . Cherniak, . . . Dreier and . . . Kovachev." The court ordered:

> that the Former Debtors shall provide to the [sanctioned parties] billing information (the "Invoices and Receipts") evidencing the costs and expenses, including without limitation attorneys' fees and expenses (the "Total Costs and Expenses") incurred by the Former Debtors in connection with the Enforcement Motion and in otherwise investigating and responding to the Notices through the date of the Hearing.

The court further ordered that any objections to Kalikow's statement of expenses be made within five days of Kalikow's submission, at which point the court would "schedule a hearing to determine the proper amount of [sanctions] to be awarded."

9

On June 30, 2004, Kalikow submitted its statement of expenses in the amount of $266,172.63, to which the Appellants objected, and the Bankruptcy Court scheduled a hearing to determine the proper amount of sanctions. Kalikow submitted a larger request on July 16, 2004, totaling $299,046.98, which reflected costs incurred after the June 10 hearing and up to July 16.

On September 14, 2004, the Appellants objected to the expenses and costs submitted by Kalikow, arguing that the total amount was excessive, that individual entries were ambiguous or unreasonable, that costs incurred after June 10 should be excluded, and that costs for speaking with The New York Times reporters and drafting professional grievances were not legitimately within those awarded. Because Solow, Cherniak, and Dreier had not been made parties to the case prior to the adjudication of their liability, the Appellants also objected to any award based on the underlying merits, submitting a declaration by Dreier, with several attachments, explaining the good-faith basis of Solow and Cherniak for believing that Kalikow might have misrepresented their assets in the earlier bankruptcy proceeding and explaining their desire to alert creditors to the issue before the deadline expired.

In a hearing held on September 28, 2004, the Bankruptcy Court concluded that it did "not find the amounts that are requested [by Kalikow] to be unusual given all of the circumstances of this case. . . . The sanction here I find is appropriate and it is justified by the documentation that has been submitted to the [c]ourt." The Bankruptcy Court also stated that the "proper amount" of costs and expenses would include those incurred through the date of the September 28, 2004 hearing because "the request for fees today[] has been caused by the covert behavior of the [Appellants] as well as the tendency to extensively litigate almost all matters that surrounded the various Orders and issues that are here," including the Appellants' submissions "devoted to the underlying merits." The court concluded that the expenses and costs were "fair, reasonable, and appropriate" and included

10

costs "up to today."

On October 14, 2004, the Bankruptcy Court issued a written order (the "Second Order") requiring the Appellants to pay $334,583.12 to Kalikow, but staying payment if the Appellants posted a $300,000 bond with the Bankruptcy Court, pending final judgment on appeal. The Appellants posted the bond of the requisite amount on October 26, 2004, and timely appealed to the United States District Court for the Southern District of New York.

II.     The District Court's Decision

The First and Second Orders were appealed to the District Court, and the appeals were consolidated in that court. In the District Court, four of the Appellants, Evergence, Kovachev, Dreier LLP, and Marc S. Dreier, argued that the Bankruptcy Court lacked subject-matter jurisdiction to hear allegations of conduct so far afield from the subject of the injunctions. They also argued that the Notices had not violated any injunction; that the sanctions were legally unwarranted; that the Bankruptcy Court lacked personal jurisdiction over non-parties; that the court had erred in weighing the evidence; and that the sanctions were excessive. Solow and Cherniak joined the foregoing arguments and submitted a brief with respect to personal jurisdiction.

The District Court rejected all of the Appellants' arguments in an unpublished decision dated September 29, 2004, entered as judgment on September 30, 2008, and affirmed the judgment and orders of the Bankruptcy Court. The court held that (1) the Bankruptcy Court had personal jurisdiction over Solow and Cherniak, who had "intentionally sought to keep their identities secret"; (2) the Bankruptcy Court did not err in proceeding by motion instead of an adversary proceeding because it had been asked to enforce a previous injunction and not to issue a new injunction; and (3) the Bankruptcy Court neither committed clear error nor abused its discretion in imposing sanctions

11

against the Appellants and awarding costs and fees to Kalikow.[8] Solow and Cherniak filed a notice of an appeal to this Court on October 27, 2008. Evergence, Dreier LLP, Marc S. Dreier, and Kosta Kovachev filed their notice of an appeal to this Court on October 28, 2008.

On appeal, Solow and Cherniak argue (1) that the Bankruptcy Court did not have personal jurisdiction over Solow and Cherniak; (2) that the Bankruptcy Court erred in proceeding by motion instead of an adversary proceeding; and (3) that the Bankruptcy Court erred in concluding that the Appellants had violated the injunctive provisions of the Plan and therefore abused its discretion in imposing sanctions against them.

**ANALYSIS**

I.      Of the Standard of Review

"A district court's order in a bankruptcy case is subject to plenary review, meaning that this Court undertakes an independent examination of the factual findings and legal conclusions of the bankruptcy court." In re Duplan Corp., 212 F.3d 144, 151 (2d Cir. 2000). Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. Id. "The Bankruptcy Court's interpretation of the text of the Plan [and] the Confirmation Order . . . are conclusions of law reviewed de novo." Id.

A bankruptcy court's award of sanctions will not be set aside by this Court in the absence of an abuse of discretion. In re Highgate Equities, Ltd., 279 F.3d 148, 151 (2d Cir. 2002); Sussman v. Bank of Israel, 56 F.3d 450, 456 (2d Cir. 1995). The bankruptcy court "necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment

---

[8] The District Court also upheld the Bankruptcy Court's determination that it had "core" subject-matter jurisdiction to decide the motions because the Notices "directly affected the integrity of [Kalikow's] bankruptcy proceedings" and were "designed to mislead third parties into thinking they had viable claims," thus implicating the Plan and the Confirmation Order. This holding, however, is not challenged on appeal.

of the evidence." In re Highgate Equities, Ltd., 279 F.3d at 152.

II.     Of Personal Jurisdiction Over Solow and Cherniak

Solow and Cherniak argue that although they had notice of the Enforcement Motion and related proceedings, they were never made proper parties to the proceedings nor properly served with process. Specifically, Solow and Cherniak argue that Kalikow's motions were never amended to name them as respondents and were insufficiently descriptive to alert them that relief was being sought against them. Solow and Cherniak also claim that service of Kalikow's Enforcement Motion on Dreier, the attorney who represented Solow and Cherniak at that time, constituted inadequate service as to them. Both the Bankruptcy Court and the District Court rejected these arguments, finding that Solow and Cherniak could not have been named in the § 350 motion to reopen and the Enforcement Motion because they purposefully concealed their identities until their attorney, Marc S. Dreier, was ordered by the Bankruptcy Court to reveal their names, and that Solow and Cherniak were sufficiently apprised and given notice of the motions.

"Before a federal court may exercise personal jurisdiction over a [party], the procedural requirement of service . . . must be satisfied." Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006) (internal quotation marks omitted); see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (stating that service of process is "fundamental to any procedural imposition on a named defendant"). These due process requirements apply in motion proceedings (i.e., contested proceedings) under Bankruptcy Rule 9014(b) with the same force as in adversarial proceedings under Bankruptcy Rule 7004. In re Zumbrun, 88 B.R. 250, 252 (B.A.P. 9th Cir. 1988).

"[I]n a contested matter, [as here,] the notice of hearing is treated as a summons and the motion is treated as a complaint." In re Parker, 392 B.R. 490, 496 (Bankr. D. Utah 2008).

13

Consistent with due process, Bankruptcy Rule 9014 requires that "reasonable notice" be given to the party against whom relief is sought. Contrary to Solow and Cherniak's claim, the motion need not specifically name the parties to the matter. See In re Zumbrun, 88 B.R. at 253. Although the failure to amend a caption to name the parties may constitute a violation of Federal Rule of Civil Procedure 10, such error does not per se constitute a deprivation of due process. See Baker v. Latham Sparrowbush Assocs., 72 F.3d 246, 254 (2d Cir. 1995) (stating that to satisfy due process, notice need only be "reasonably calculated" to apprise the adverse party (internal quotation marks omitted)).

Here, Kalikow's motion sought an order against "Evergence . . . and its directors, officers, controlling persons, and agents, including the law firm of Dreier LLP." Moreover the motion specified that its terms would apply to as-yet-unidentified parties, noting that "[t]he use of Evergence to place the Notices makes it likely that the individuals behind the Notices do not want to be identified . . . . [I]t appears that certain parties are using Evergence as a front here to pursue their improper ends." Thus, we agree with the lower courts that the motion was sufficiently descriptive to alert Solow and Cherniak that relief was being sought against them. Indeed, after Solow and Cherniak's identities were revealed (following much resistance), Kalikow expressly stated in its Reply to Dreier LLP's objection that relief was sought against Solow and Cherniak.

Alternatively, Solow and Cherniak argue that they were not properly served. They, however, do not dispute that their counsel, Dreier LLP, was properly served. Although Solow and Cherniak argue that Dreier LLP did not represent them, the record clearly establishes that (1) Solow and Cherniak engaged Dreier LLP to place the Notices; and (2) Dreier LLP continued to act as counsel for Solow and Cherniak in connection with the Enforcement Motion. For example, Dreier stated during his deposition that "[w]e continue to represent these clients insofar as these clients need

14

representation in connection with this matter." And in the Appellants' submitted objections to Kalikow's motions in the Bankruptcy Court, Dreier acknowledged that "for purposes of full disclosure to the Court, it should be noted that Dreier LLP was retained by Sheldon H. Solow and Stephen Cherniak — each in their individual capacities — in connection with some of the facts and events upon which the Injunction Motion is based." Moreover, Dreier LLP filed their papers on behalf of Solow and Cherniak on July 8, 2004, attempted to submit papers on their behalf on September 14, 2004, and appeared at a hearing on their behalf on September 28, 2004. Indeed, the record establishes that Dreier LLP was not only Solow's "trusted lawyer" in this case but also in other litigation as well. Cf. Luedke v. Delta Air Lines, Inc., 159 B.R. 385, 395 (Bankr. S.D.N.Y. 1993) (holding that defendant's active participation through its counsel in one proceeding implicitly authorized counsel to accept service on client's behalf in related proceeding); In re Reisman, 139 B.R. 797, 801 (Bankr. S.D.N.Y. 1992). Proper service on Dreier LLP, therefore, constituted proper service on Solow and Cherniak. Fed. R. Civ. P. 4(e).

Thus, because Solow and Cherniak were properly served and given reasonable notice of the relief sought against them, we conclude that the Bankruptcy Court properly exercised personal jurisdiction over them.

III.     Of the Bankruptcy Court's Decision to Proceed by Motion

Solow and Cherniak argue that because Kalikow's Enforcement Motion sought injunctive relief, the Bankruptcy Court was required to conduct the case as an adversary proceeding, rather than a contested matter. Citing to Federal Rules of Bankruptcy Procedure 7001(7), which requires the commencement of an adversary proceeding "to obtain an injunction or other equitable relief," Solow and Cherniak argue that Kalikow should have been required to have commenced an adversary proceeding in response to the publication of the Notices. Specifically, Solow and

15

Cherniak claim that Kalikow sought injunctive relief in the Enforcement Motion beyond the enforcement of those injunctions provided for in the Plan and Confirmation Order. The Bankruptcy Court rejected this claim, finding that the Enforcement Motion involved the enforcement of a pre-existing injunction, a consideration that permits the resolution of the motion as a contested matter rather than through an adversary proceeding. See In re Texaco Inc., 182 B.R. 937, 945 (Bankr. S.D.N.Y. 1995); In re WorldCorp, Inc., 252 B.R. 890, 895 (Bankr. D. Del. 2000) ("[A]n adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained."); see also 11 U.S.C. § 524(g)(1)(A) (providing that a court may issue an injunction in connection with an order confirming a plan of reorganization "after notice and [a] hearing"); cf. Fed. R. Bankr. P. 7001(7) (setting forth the scope and requirements for an adversary proceeding).

We hold that the District Court did not err in concluding that the Enforcement Motion did not seek a new injunction but, rather, "[sought] to enforce an injunction already in place — [one] that was created by sections 1141 and 524 of the Bankruptcy Code and the express terms of the [Plan] and Confirmation Order." See In re Texaco, 182 B.R. at 945. That is, we reject the argument of Solow and Cherniak insofar as they claim that Kalikow sought new injunctive relief from the Bankruptcy Court, as the relief sought — including publication of corrective notices — was meant to correct the alleged violation of the existing injunction. We agree with the District Court that the relief sought by Kalikow — including publication of corrective notices — was to correct the perceived violation of the injunction. Moreover, the requested relief of the publication of corrective notices was not granted by the District Court, and none of the Appellants therefore suffered any prejudice. Solow and Cherniak have thus failed to demonstrate that they were prejudiced from the denial of the "formalities and discovery rights accompanying normal civil suits" accorded to

adversary proceedings. Solow and Cherniak appeared at two hearings and made written submissions before the Bankruptcy Court. We reject their claim that they were deprived of a fair opportunity to present their case as a result of the Bankruptcy Court proceeding by motion, as opposed to initiation of an adversary proceeding to enforce the terms of the Plan and Confirmation Order.

IV.    Of the Bankruptcy Court's Award of Sanctions

Solow and Cherniak argue that the injunctive provisions cited by the Bankruptcy Court are unrelated to their conduct and that the injunctive provisions of the Plan and the Confirmation Order only pertain to holders of pre-confirmation claims discharged in bankruptcy. As Solow and Cherniak were not holders of pre-confirmation discharged claims, they claim that they were not personally bound by these injunctive provisions.

The Bankruptcy Court imposed sanctions on the Appellants because it found that they had "violat[ed] the release, discharge, and injunction provisions of the Reorganization Plan, the Confirmation Order, and Sections 1141 and 524 of the Bankruptcy Code." The court also found that the"[t]he notices were designed to mislead the public into thinking that they have a right to reassert discharged claims." Although we find no clear error with any of the factual findings of the Bankruptcy Court, including its findings regarding the Appellants' motives behind the publication of the Notices, we conclude that sanctions were not properly imposed in this case pursuant to 11 U.S.C. §§ 524(a)(2), 1141. Our holding, however, should not be read to condone the Appellants' conduct in this case.

The effect of a discharge in Chapter 11 bankruptcy is set forth in § 524 of the Bankruptcy Code. "Generally, a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a) permanently enjoins creditor actions to collect discharged debts." Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444 (1st Cir. 2000); see also Nat'l Ins. Co. of N. Am. v. NGC Settlement

17

Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.), 118 F.3d 1056, 1062 n.13 (5th Cir. 1997); Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388–89 (11th Cir. 1996); In re Getzoff, 180 B.R. 572, 573 (B.A.P. 9th Cir. 1995). When there is a confirmation order of a reorganization plan in bankruptcy pursuant to Chapter 11, that confirmation order discharges the debtor from all pre-confirmation claims. 11 U.S.C. § 1141(d)(1)(A). A confirmed plan binds both "the debtor . . . and any creditor," 11 U.S.C. § 1141(a), which includes entities that have "claim[s] against the debtor that arose at the time of or before the order for relief," 11 U.S.C. § 101(10). Similarly, § 524(a)(2) provides that a discharge "operates as an injunction against . . . an act[] to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2); see also 11 U.S.C. § 727(c)(1) (stating that the "trustee, a creditor, or the United States trustee may object to the granting of a discharge").

We agree with Solow and Cherniak that they are not holders of pre-confirmation claims discharged in bankruptcy who would normally be bound by the provisions of the Plan, as only a pre-confirmation creditor or holder of such a claim is bound by the plain language of the injunctive provisions of the Plan. Kalikow's Plan specifically provided that it "bind[s] all holders of Claims," and "discharge[s] the Debtors from any Claim . . . that arises before the [Plan's] Effective Date. Likewise, the Confirmation Order eliminated the debtor's liability as "to any holder of a claim"; discharged the debtors, "as to each holder of a Claim," from "debts that arose . . . prior to or on the Effective Date"; precluded, "as to every discharged debt . . ., the creditor that held such debt . . . from asserting against the Debtors, . . . any other or further Claim" based on pre-confirmation events; and "restrained and enjoined" all "creditors . . . or other entities whose claims are discharged . . . by the Plan and this order" from acting "to collect . . . such debts" in the future.

Accordingly, the Bankruptcy Court's authority, pursuant to §§ 524(a)(2) and 1141, does not

18

extend to sanctioning the Appellants, whose bad-faith conduct did not run afoul of the plain language of the Confirmation Order. Cf. Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995) (observing that to hold a party in contempt, a court must have "entered a clear and unambiguous order").

Furthermore, Solow and Cherniak cannot be liable for a violation of an injunction in their alleged capacities as accessories to or agents of a bound party (i.e., a holder of a pre-confirmation discharged claim) in this case. Although injunctions can bind third parties who act on a named party's behalf, see Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945), here, because the Bankruptcy Court found that none of the bound parties — the holders of pre-confirmation discharged claims — took any prohibited act as a result of the Notices, Solow and Cherniak may not be sanctioned as acting on behalf of creditors. Cf. Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002) ("Before a party can be found guilty of aiding and abetting civil contempt, the court must find: (1) that the party subject to the court's mandate committed contempt; and (2) that another party assisted the enjoined party.").

We reject Kalikow's argument that §§ 524, 1141, and the Confirmation Order forbid any "attempt to collect" without regard to the party "from whom" one attempts to collect. Cf. Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 833 (2d Cir. 1930) ("[I]t is not the act described which the decree may forbid, but only that act when the defendant does it." (emphasis added)). Although § 524(a)(2) broadly states that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor," 11 U.S.C. § 524(a)(2), it cannot be that § 524(a)(2) prohibits misled creditors from inquiring about their claims (or otherwise submitting a proof of claim) to a third party who (1) has no relation to the reorganization proceedings and (2) has not sought repayment from the former

debtor or initiated proceedings in court on behalf of the creditors.  Cf. In re Nassoko, 405 B.R. 515 (Bankr. S.D.N.Y. 2009) (involving case where the creditor sent the debtor a letter allegedly intended to induce payment of discharged debt).

In cases where courts have held that § 524(a)(2) bars creditors from any act to collect a discharged debt through various subterfuges, the creditors' schemes at least involved contact with the debtor to extract payment.  See, e.g., In re Walker, 180 B.R. 834 (Bankr. W.D. La.. 1995) (continued deduction of loan payments from debtor's paycheck without affirmative manifestation of debtor's assent to such payments violated discharge injunction); In re Cost, 161 B.R. 856 (Bankr. S.D. Fla. 1993) (withholding debtor's social security benefits to repay prepetition overpayment violated discharge injunction), vacated by settlement 190 B.R. 694 (S.D. Fla. 1994).  Here, in contrast, no creditor collected from a third party what he was owed by Kalikow, and no third party thereby acquired an interest against, or demanded payment from, Kalikow, either directly or through the Bankruptcy Court as a result of the Appellants' actions.  The former creditors neither contacted Kalikow nor initiated judicial proceedings.  Their contact with Evergence in no way "pressured" Kalikow to repay any of the discharged debts.  In re Nassoko, 405 B.R. at 525 (internal quotation marks omitted); cf. id. (observing that the purpose of section 524(a)(2) "is to give complete effect to the discharge . . . . Once a debt is discharged, the debtor will not be pressured in any way to repay it." (internal quotation marks and alternation omitted)).[9]  Accordingly, the "acts" specified in §

_____

[9]  In re Nassoko, cited by Kalikow, is inapposite here.  In that case a creditor sold a discharged debt to a third party, who in turn demanded payment from the debtor.  405 B.R. at 518–19.  The court rejected the creditor's argument that selling the loan did not constitute an action to collect, observing that such reasoning would allow any creditor to "simply collect on a discharged debt indirectly by selling it to a third party, aware that the third party intended to pursue collection of the debt.  The third party could then plead ignorance of the discharge, thereby purporting to insulate all parties from liability."  Id. at 522.  In the case before us, although former creditors responded to the Notices by making telephone calls and by faxing letters in search of information, none of these creditors ever filed suit or attempted to make a collection in violation of the

20

524(a)(2) taken by holders of pre-confirmation claims discharged in bankruptcy — i.e., telephone calls and the mailing of letters and proof-of-claim forms to Evergence — are simply too far removed from debtor Kalikow and the Bankruptcy Court to fall within the reach of 11 U.S.C. § 524(a)(2).

V.      Whether 11. U.S.C. § 105(a) is an Independent Basis for the Award of Sanctions

Kalikow argues in the alternative that § 105(a) of the Bankruptcy Code serves as an independent basis for affirming the Bankruptcy Court's award of sanctions in this case.  We disagree.  The Bankruptcy Court's discretion to award sanctions may be exercised only on the basis of the specific authority invoked by that court.  Because an award might be based on "any of a number of rules or statutory provisions," each "governed by differing standards," this Court has found it "imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power."  Sakon v. Andreo, 119 F.3d 109, 113 (2d Cir. 1997) (internal quotation marks omitted).  The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders.  See Int'l Union, UMWA v. Bagwell, 512 U.S. 821, 831 (1994) ("The traditional justification for the relative breadth of the contempt power has been necessity . . . ."); see also Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 78 (1st Cir. 2002).

Section 105(a) of the Bankruptcy Code empowers a bankruptcy court with authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  We have long recognized that "[s]ection 105(a) limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'"  In re Daily Mart Convenience Stores, Inc., 351 F.3d 86, 92 (2d Cir. 2003)

---

injunction.

21

(quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988)). Section 105 "does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" Id. (quoting United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986)); accord Bessette, 230 F.3d at 444 ("Section 105(a) empowers the bankruptcy court to exercise its equitable powers — where necessary or appropriate — to facilitate the implementation of other Bankruptcy Code provisions." (internal quotation marks and alteration omitted)). "Thus, § 105 does not itself create a private right of action, but a court may invoke § 105(a) if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code . . . ." Bessette, 230 F.3d at 444–45 (internal quotation marks omitted). These powers are "in addition to whatever inherent contempt powers the court may have" and "must include the award of monetary and other forms of relief to the extent such awards are necessary and appropriate to carry out the provisions of the Bankruptcy Code and provide full remedial relief." Id. at 445 (internal quotation marks and citations omitted). We therefore must reject Kalikow's argument that § 105 serves as an independent basis for awarding sanctions without violation of § 524(a)(2) or another provision of the Bankruptcy Code.

We certainly acknowledge the legitimate concern of the Bankruptcy Court and appreciate its attempt to exercise a combination of inherent and statutory authority to remedy the harm caused by the Appellants' reprehensible conduct. We must hold, however, that the equitable power conferred on a bankruptcy court by 11 U.S.C. § 105 "is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." In re Dairy Mart Convenience Stores, Inc., 351 F.3d at 92. This limitation "suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." Id. (quoting 2 Collier on

22

Bankruptcy ¶ 105.01[1] (15th ed. 2003)).  Further, the Supreme Court has cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion."  Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991); see also Sakon, 119 F.3d at 113.

VI.    Conclusion

For the foregoing reasons, we affirm the Bankruptcy Court's judgment in all respects except its imposition of sanctions.  See In re Highgate Equities, Ltd., 279 F.3d at 152 (The bankruptcy court exceeds its discretion "if it based its ruling on an erroneous view of the law.").  Accordingly, we VACATE the judgment of the District Court insofar as it upholds the award of sanctions, and we REMAND the case to the District Court with instructions to remand to the Bankruptcy Court for further proceedings consistent with this opinion.