**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Marion SELTZER, Esq., Appellant,**

**Vaughn Rosario, a/k/a Vaughn Michaels, Defendant.**

**Docket No. 99–6151.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 20, 2000.

Decided Sept. 25, 2000.

John H. Jacobs, New York, NY, (Joshua L. Dratel, Joshua L. Dratel, P.C., New York, NY, on the brief) for Appellant.

Dwight Holton, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY (Loretta Lynch, United States Attorney, Eastern District of New York, Susan Corkery, Assistant United States Attorney, Brooklyn, NY, of counsel) for Appellee.

Before: CARDAMONE, LEVAL, PARKER, Circuit Judges.

PARKER, Circuit Judge:

Appellant Marion Seltzer appeals from the June 4, 1999, Order of the United States District Court for the Eastern District of New York, which directed her to pay a $350 fine for her alleged failure to return to court on time. Following the oral imposition of this sanction, the district court issued a written order on June 22, 1999, stating that it was imposing sanctions for appellant's tardiness in returning to court for the jury verdict, and it was basing its authority on its inherent power to manage its own affairs. On appeal, Seltzer argues that the evidence supporting the sanction was insufficient and that she was not afforded procedural due process. She also contends that the sanction cannot be upheld because there is no indication of bad faith on her part, and bad faith is required prior to imposition of a sanction pursuant to the inherent powers of the court. For the reasons set out below, we reject appellant's argument that a finding of bad faith is a necessary prerequisite to imposing a sanction under the district court's inherent powers, under the circumstances of this case, but we vacate the order and remand to the district court because the record does not contain the facts necessary for our review of the imposition of the sanction.

## I. BACKGROUND

Appellant Marion Seltzer is an attorney who represented Vaughn Rosario in a multidefendant criminal case before Judge Glasser in the United States District Court for the Eastern District of New York. During the trial, Seltzer was assisted by Elizabeth Macedonio, an associate who was responsible for many facets of the defense, including delivering the opening statement. On June 3, 1999, the jury began its deliberations. After the jury was led from the courtroom by the United States Marshal, the Court had a brief conference with counsel, including Seltzer:

> THE COURT: You can recess for lunch. We'll resume at about 2:15.

> \* \* \*

> MS. DAVID: Jury deliberation, you require the attorneys be here in the courthouse? My office is about ten minutes from here.

> THE COURT: I would like you to be available so we don't have to wait 10 or 15 minutes. We have a verdict sheet that I would like you to look at.

On June 4th, the jury continued deliberations. Still unable to reach a verdict, the jury recessed for lunch. Sometime after 2 p.m. on the same day, the jury sent a note indicating that it had reached a verdict. Court reconvened soon thereafter, with all parties and counsel present with the exception of Seltzer. The court stated, "[a]s soon as Ms. Seltzer gets here, we'll start." Following a pause during which time Seltzer apparently arrived, the court then stated, "Ms. Seltzer, when these proceedings

are concluded, I'm going to direct you to remain."

According to the transcript, the jury entered the courtroom with its verdict at 2:26 p.m. A courtroom log sheet, however, indicates that the "[j]ury came into court at 2:20 with the following verdict:...." The district court then took the jury's verdict. After the jury was discharged, the district court set sentencing dates for those defendants who had been convicted, including Seltzer's client.

Following this scheduling, the district court instructed Seltzer to approach, to which Seltzer replied, "[c]an I have one moment to speak to my client?" Following a brief pause for Seltzer to address her client, the court continued:

> Ms. Seltzer, you have kept this court, twelve jurors, three or four defendants and their lawyers, ... the Assistant United States Attorney, approximately twenty some-odd people, waiting for twenty-five minutes. And I would like you to tell me why I shouldn't impose a sanction upon you, Ms. Seltzer, not only for violating the order of this court, which I think, after I charged the jury, I—not advised—told counsel to keep themselves available, so that the court didn't have to go—

Seltzer replied:

> I apologize your Honor. I was, frankly, at lunch, and I had my cell phone with me, and I was walking down Court Street when we got the call, and I walked directly here.

Following Seltzer's statement, the court stated that it was "going to direct you, Ms. Seltzer, to pay a fine to the Clerk of Court in the amount of $350 by Monday afternoon." Seltzer then inquired whether the court's decision was appealable, and once again apologized. The district court responded, "[e]xcuse me. You didn't have the courtesy to apologize to the court when you walked in twenty-five minutes late."

Following an additional statement of apology, Seltzer and the court engaged in the following exchange:

> MS. SELTZER: I was outside the courthouse just walking down Court Street when I got the telephone call.
>
> If I may just complete the record, your Honor? I don't recall your telling us today any specific time.
>
> THE COURT: I didn't tell you today, and I didn't say I told you today.
>
> MS. SELTZER: On the other days, your Honor has instructed us to come back at 2:15. I came back somewhere between 2:20 and 2:25. I apologize, because you are correct. I shouldn't have been on Court Street. I should have been standing in front of the building.
>
> But I don't want you to think that I mean any disrespect to the court. It's been my experience in the past that a defense lawyer is given five or ten minutes, after receiving a telephone call that there's a verdict, to come into the courtroom. And from the time that I received the telephone call that there was a verdict, I believe was less than ten minutes.
>
> THE COURT: Thank you very much.

On June 7, 1999, Seltzer paid the $350 fine and filed her notice of appeal. On June 16, 1999, the court issued a written order. The order provides, in part:

> At approximately 2:25 p.m. Ms. Seltzer entered the courtroom and offered no apology for her lateness. She was directed to remain when the proceedings were over. During the intervening 25 minutes [from the jury's notification at 2:00 p.m. that they had reached a verdict] 12 jurors were waiting in a windowless room, two assistant Untied [sic] States Attorneys, a case agent, four defendants, three defense attorneys, a court stenographer, a court clerk and the Court, twenty five persons in all were kept waiting. At the conclusion of the proceedings, I gave Ms. Seltzer an

opportunity to explain why she shouldn't be sanctioned. Her explanation was at odds with what the court Clerk reported she said when telephoned, and in any event was unacceptable. She was directed to pay a fine of $350 to the Clerk of Court.

The imposition of sanction is warranted, I believe, by the inherent power of the court "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash Railroad Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). That inherent power has frequently been invoked by courts to regulate the conduct of members of the Bar.... See also, In re *Sutter,* 543 F.2d 1030 (2d Cir.1976)[.] Local Civil Rule 1.5(f)[of the] Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, explicitly if not implicitly acknowledges that inherent power.

On October 26, 1999, Seltzer filed a motion to supplement the record. In this motion, Seltzer sought to introduce cellular telephone records, which were not presented to the district court, that she claims establish exactly when she received the call from the clerk informing her that the jury had reached a verdict. On January 10, 2000, this Court granted Seltzer's motion.

## II. DISCUSSION

On appeal, Seltzer argues that the district court's order must be reversed because the court did not find that she acted in bad faith. Seltzer claims that such a finding of bad faith is a necessary prerequisite to the imposition of sanctions under the inherent powers of the court.[1] Seltzer also argues that there is insufficient evidence to support the imposition of sanctions and that the award violates her due process rights. Specifically, Seltzer contends that she did not have notice of the order she was sanctioned for violating, and that the district court did not provide her with notice and an opportunity to be heard prior to imposing sanctions.

### A. Standard of Review

■ This Court reviews "all aspects of a District Court's decision to impose sanctions for abuse of discretion." *Schlaifer Nance & Co. v. Estate of Andy Warhol,* 194 F.3d 323, 333 (2d Cir.1999) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (stating that sanctions imposed under district court's inherent power are reviewed for abuse of discretion)). Even under this deferential standard of review, however, this Court must be careful "to ensure that any such decision [to sanction a party or attorney] is made with restraint and discretion." *Id.* at 334.

### B. The Bad Faith Requirement

■ Seltzer argues that under the case law of this Circuit, a district court imposing sanctions under its inherent powers can only do so if the party subject to the sanctions acted in "bad faith." Seltzer argues that neither the June 4, 1999 oral order nor the June 16, 1999 written order of the district court contained any allegations or findings of bad faith by the district

---

1. The district court's written order of June 16, 1999, makes reference to the district court's power to impose sanctions under the local rules. The court cites this Court's decision in In re *Sutter,* 543 F.2d 1030 (2d Cir.1976), which held that an attorney could be sanctioned for his reckless failure to abide by a local rule. *See id.* at 1035. Although the district court cites Local Rule 1.5 as support for its order of sanctions, Local Rule 1.5 provides only that "[t]he remedies provided by this rule are in addition to the remedies available to individual judges ... under applicable law with respect to lawyers appearing before them." Nothing in Rule 1.5 relates to the type of misconduct alleged in this case, and we have therefore treated the district court's order as one pursuant solely to the court's inherent powers.

court, and thus, the sanctions must be reversed. In support of her argument, Seltzer cites this Court's decisions in *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir.1998), *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir.1997), *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 41 (2d Cir.1995), and *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986).

At first glance, the cases cited by Seltzer appear to support the proposition that a finding of bad faith is required to justify sanctions under the inherent powers of the court. For example, we have stated that "we have construed use of ... the court's inherent power to be authorized only when there is a finding of conduct constituting or akin to bad faith." *Sakon*, 119 F.3d at 114. Similarly, in *DLC Management Corp.*, we stated that "this court has required a finding of bad faith for the imposition of sanctions under the inherent power doctrine." 163 F.3d at 136. In fact, a number of our cases speak this broadly. *See Schlaifer Nance & Co.*, 194 F.3d at 338 (court's sanctions under inherent powers doctrine require highly specific finding of bad faith); *Milltex*, 55 F.3d at 41 (reversing sanction imposed on attorney because there was insufficient evidence of bad faith); *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (sanctions under inherent powers require finding of bad faith); *Oliveri*, 803 F.2d at 1272 (same).

But while the broad language of these cases provides Seltzer with rhetorical support, a close analysis of their holdings in context fails to support Seltzer's argument. In each of these cases, we have considered whether bad faith is required when a court imposes attorney's fees as a sanction, or when the court sanctions an attorney for conduct that is integrally related to the attorney's role as an advocate for his or her client. For instance, we have reversed sanctions of attorney's fees in cases where the district court has not made an explicit finding of bad faith noting that the shifting of attorney's fees represents a departure from the "American Rule" that each party should bear its own costs. *See Sakon*, 119 F.3d at 114 (holding that award of attorney's fees was not justified because court found only that sanctioned party acted with "excusable neglect"); *Teamsters*, 948 F.2d at 1345; *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (discussing bad-faith exception to general rule that parties bear their own attorneys' fees); *DLC Management*, 163 F.3d at 136 (finding of bad faith required when an attorney has acted on behalf of his or her client in such a way that evidences a "conscious disregard of ... discovery obligations.") In each of those cases, we found bad faith to be a prerequisite for imposition of sanctions where the court sanctioned an attorney by reason of excesses in conduct of the sort that is normally part of the attorney's legitimate efforts at zealous advocacy for the client.

We have stated that the requirement of bad faith in these contexts is meant to strike a balance between the vigorous pursuit of litigation and the right to be free of litigation that is undertaken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Oliveri*, 803 F.2d at 1272. Thus, we have held:

> To ensure ... that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both " 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual finding of [the] lower courts."

*Oliveri*, 803 F.2d at 1272 (alterations in original) (quoting *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir.1986)).

In this case, however, the district court imposed sanctions because Seltzer alleged-

ly had disrupted and delayed the proceedings and violated a prior order of the court. There is no allegation that either of these actions was undertaken as part of Seltzer's role in representing her client. Rather, both of these charges involve a lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court. Under circumstances such as these, sanctions may be justified absent a finding of bad faith given the court's inherent power " 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Chambers*, 501 U.S. at 43, 111 S.Ct. 2123 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

In reaching this conclusion, we note that there is a split among the circuits and even within some circuits evidencing confusion about a district court's power to impose sanctions under the inherent powers doctrine. *Compare United States v. Mottweiler*, 82 F.3d 769, 772 (7th Cir.1996) ("Negligent failure to be present when the jury returns could support a civil order requiring counsel to reimburse one's adversary, and the judicial system, for the expenses to which that delict leads."), *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 n. 11 (3d Cir. 1994) ("[a] court need not always find bad faith before sanctioning under its inherent powers"), *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir.1993) (rejecting argument that sanctions under inherent authority of courts always requires finding of bad

faith), *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1207–08 (11th Cir.1985) (holding that sanctions can be justified under inherent authority of court even if sanctioned party acted in good faith), *and In re Baker*, 744 F.2d 1438, 1441 (10th Cir.1984) (en banc) (upholding sanction based on "record [that] reflects not contumaciousness, but a pattern of negligence"), *with Elliott v. Tilton*, 64 F.3d 213, 217 & n. 3 (5th Cir.1995) (rejecting notion that finding of misconduct short of bad faith can support imposition of sanctions) (citing *Chambers*, 501 U.S. at 58, 111 S.Ct. 2123 (Scalia, J., dissenting); Thomas E. Baker, *The Inherent Power to Impose Sanctions: How a Federal Judge is Like an 800–Pound Gorilla*, 14 Rev. Litig. 195, 199 & n. 15 (1994)),[2] *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C.Cir.1992) (reversing sanctions against attorney for costs associated with attorney's failure to subpoena witnesses in timely fashion because such failure did not constitute bad faith, and hence could not support imposition of sanctions under the inherent powers doctrine).[3]

Our opinion today therefore is intended to clarify the circumstances under which a district court has the power to sanction pursuant to its inherent authority without a finding of bad faith. *Cf. Republic of the Philippines*, 43 F.3d at 74 n. 11 (distinguishing between sanctions under inherent powers doctrine that require finding of bad faith and those that do not). When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in "the actions that led

---

**2.** The Fifth Circuit has recently confirmed that the threshold finding required to justify sanctions under the inherent powers doctrine is "extremely high. The court must find that the 'very temple of justice has been defiled' by the sanctioned party's conduct." *Goldin v. Bartholow*, 166 F.3d 710, 722–23 (5th Cir. 1999) (quoting *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir.1995)).

**3.** *Compare Moore v. Keegan Management. Co.*, 78 F.3d 431, 436 (9th Cir.1996) (reversing sanctions imposed under inherent powers doctrine because district court found only "recklessness"), *and Zambrano v. City of Tus-*

*tin*, 885 F.2d 1473, 1478 (9th Cir.1989) (requiring finding of bad faith) *with People of the Territory of Guam v. Palomo*, 35 F.3d 368, 376 (9th Cir.1994) (upholding sanctions under inherent powers doctrine even absent finding of bad faith), *and Unigard Sec. Ins. Co. v. Lakewood Eng'g Mfg. Corp.*, 982 F.2d 363, 368 n. 2 (9th Cir.1992) ("This court has since *Roadway*, confirmed the power of the district court to sanction under its inherent powers not only for bad faith, but also for willingness or fault by the offending party.") (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988)).

to the lawsuit ... [or] conduct of the litigation," *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), which actions are taken on behalf of a client, the district court must make an explicit finding of bad · faith. *See Chambers,* 501 U.S. at 50, 111 S.Ct. 2123; *Milltex,* 55 F.3d at 39 (reversing sanction because attorney's actions in representing client were neither "entirely without color [of legal legitimacy]" nor undertaken with "improper purposes"). But, when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power.

■ Our prior case law may best be understood as addressing only one breed of a district court's inherent powers-the power to police the conduct of attorneys acting on behalf of litigants. Today, we hold that the inherent power of the district court also includes the power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith. Accordingly, we reject Seltzer's argument that the district court's order is defective because it does not include a specific finding of bad faith.

## C. *Seltzer's Due Process Rights*

Seltzer also argues that the district court's orders violate her procedural due process rights. Seltzer maintains that the district court failed to afford her notice and an opportunity to be heard before entering an order requiring that she pay a fine. According to Seltzer, the district court's failure to specify the exact order she was accused of violating or to make a detailed record of the basis for the sanction constitutes a violation of her due process rights such that the district court's order must be reversed.

■ After reviewing the record in this case, we are unable to determine precisely the nature of the district court's order or the exact factual basis that the district court relied upon in imposing sanctions. Accordingly, we must vacate the district court's order and remand for further factual development.[4] *Cf. United States v. Claros,* 17 F.3d 1041, 1047 (7th Cir.1994) (vacating and remanding award of sanctions because appellate court could not "discern, with the degree of certainty necessary for meaningful appellate review, the basis for the imposition of [sanctions]") (footnote omitted). On remand, the district court must provide Seltzer with

> "specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on th[e] matter," and [Seltzer] must be "forewarned of the authority under which sanctions are being considered, and given a chance to defend [herself] against specific charges."

*60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.),* 218 F.3d 109, 117–18 (2d Cir.2000) (to be published at 218 F.3d 109, 117 (2d Cir.2000)) (quoting *Sakon,* 119 F.3d at 114).

In this case, Seltzer did not have an opportunity to respond to the imposition of sanctions with an awareness of the source of the authority for the sanctions, or with knowledge of the standard governing im-

---

4. Seltzer argues that in the event this case is remanded, it should be assigned to a different judge. We decline the request for reassignment, in light of the fact that the basis for our remand is, in part, for clarification of matters that are most readily clarified by Judge Glasser. *See United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977)(in banc)(per curiam). Furthermore, Seltzer makes no accusation, nor is there any indication in the record, that Judge Glasser is biased in any way, nor is reassignment necessary to "preserve the appearance of justice." *Id.*

position of sanctions. Furthermore, it appears from the record that the district court based its decision to sanction Seltzer, in part, on unidentified information communicated by the clerk to the judge about his conversation with Seltzer. As Seltzer was not told what the clerk had said, she had no opportunity to dispute, rebut, or explain it. Because the details of these representations are not in the record on appeal, we are unable to determine exactly what circumstances gave rise to the district court's decision to sanction Seltzer. We therefore must remand for further development of the record to provide Seltzer with proper notice and an opportunity to be heard.

## III. CONCLUSION

The order of the district court is VACATED, and the case is REMANDED to the district court for proceedings consistent with this opinion.