UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2022

(Argued:  September 28, 2022　　Decided:  August 30, 2023)

Docket No. 21-2238

IN RE:  LARISA IVANOVNA MARKUS,

*Debtor.*

VICTOR A. WORMS,

*Appellant,*

*v.*

YURI VLADIMIROVICH ROZHKOV,

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:　　JACOBS, CHIN, AND ROBINSON, *Circuit Judges.*

Appeal from two orders of the United States District Court for the Southern District of New York (Liman, *J.*), entered April 3, 2020, and September 9, 2021, affirming in relevant part orders of the United States Bankruptcy Court for the Southern District of New York (Glenn, *J.*) imposing civil contempt sanctions and awarding attorneys' fees against the debtor's attorney in a Chapter 15 proceeding. The district court held that the bankruptcy court has inherent authority to issue civil contempt sanctions, including per diem sanctions and attorneys' fees, arising out of a contemnor's failure to comply with the bankruptcy court's orders.

AFFIRMED.

> VICTOR A. WORMS, Law Offices of Victor A. Worms, New York, NY, *for Appellant.*
>
> STEPHEN B. SELBST (Rachel H. Ginzburg, *on the brief*), Herrick, Feinstein LLP, New York, NY, *for Appellee.*

CHIN, *Circuit Judge*:

In this case, appellant Victor A. Worms, an attorney, represented the debtor Larisa Ivanovna Markus in proceedings before the United States Bankruptcy Court for the Southern District of New York (Glenn, *J.*). After

2

Worms failed to comply with a series of discovery orders, the bankruptcy court imposed sanctions of, *inter alia*, $55,000 for 55 days of non-compliance and $36,600 in attorneys' fees. The orders were affirmed by the United States District Court for the Southern District of New York (Liman, *J.*). Worms now appeals to this Court, arguing that, first, the bankruptcy court lacked inherent authority to issue civil contempt sanctions, and second, as a matter of due process, he was not provided with sufficient notice of the basis for the sanctions imposed against him. We affirm.

## *STATEMENT OF THE CASE*

### I. Background

Markus is a Russian citizen who was the founder of Vneshprombank, Ltd. ("Vneshprombank"), one of Russia's largest banks. She served as its president from 1995 through 2016. On March 11, 2016, the Moscow Arbitration Court declared Vneshprombank insolvent and commenced bankruptcy proceedings against it. *See In re Foreign Econ. Indus. Bank Ltd.*, 607 B.R. 160, 163 (Bankr. S.D.N.Y. 2019). Thereafter, on April 19, 2016, one of Markus's creditors applied to the Moscow Arbitration Court for commencement of bankruptcy proceedings against Markus personally. *Id.* The application was

3

granted on April 22, 2016, and the Moscow Arbitration Court appointed appellee Yuri Vladimirovich Rozhkov to preside over the liquidation of Markus's assets. *Id.* at 163-64. Under Russian bankruptcy law, Rozhkov is responsible for pursuing actions against persons or entities that contributed to Markus's insolvency.

On May 12, 2017, Markus was convicted in a Russian tribunal for embezzling approximately $2 billion from Vneshprombank. According to the judgment of conviction, Markus "creat[ed] an organized criminal group from the Bank's employees and other persons" "to steal a significant amount of funds from [Vneshprombank] . . . for purposes of personal enrichment.'" BK-Dkt. No. 5-4 at 7.[1] On August 15, 2017, Markus was sentenced to eight and a half years of imprisonment.

## II.     Proceedings Below

### A.     *Commencement of the Chapter 15 Bankruptcy Proceeding*

On January 10, 2019, Rozhkov, acting as Markus's Foreign Representative (the "FR"), filed a Verified Petition Under Chapter 15 for

---

[1]     Citations to "BK-Dkt. No" are to the bankruptcy court's docket, case number 19-10096.

4

Recognition of a Foreign Main Proceeding in the bankruptcy court below.[2] The

Chapter 15 action was intended, *inter alia*, to "seek discovery concerning

Ms. Markus' assets which might be located in the United States." BK-Dkt. No. 6

at 6. The FR supported its petition with declarations representing that Markus

had substantial property in the United States; one declaration reported that

Markus had formed at least ten companies in New York between 2005 and 2015

and had spent over $10 million between 2008 and 2015 to purchase eight

apartments in Manhattan.

On April 1, 2019, the bankruptcy court granted Chapter 15

recognition of the Russian insolvency proceeding against Markus (the

"Recognition Order"). *See generally* 11 U.S.C. §§ 1515-1524; *In re Fairfield Sentry*,

714 F.3d at 132-33.

### B. *Discovery Disputes*

Discovery disputes arose almost immediately. Upon request from

the FR, the bankruptcy court scheduled a discovery conference for May 29, 2019.

Worms appeared on Markus's behalf on May 28, 2019, and he advised that he

---

[2] Chapter 15 was enacted in 2005 to improve the fair and efficient administration of cross-border insolvencies. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 132 (2d Cir. 2013).

intended to file a motion to vacate the Recognition Order and requested a stay of all proceedings pending a ruling on that motion. The conference, nonetheless, proceeded the next day. The bankruptcy court recognized that, on the part of certain Markus-related entities, "there is clearly, clearly a pattern of not complying with . . . discovery obligations and of stonewalling that has to come to an end." BK-Dkt. No. 59 at 29.[3] The bankruptcy court also advised Worms that it would consider his arguments to vacate the Recognition Order so long as Worms brought "a proper motion," *id.* at 12, which Worms later filed on June 18, 2019.

On June 25, 2019, after Worms rejected the FR's proposal to meet and confer regarding discovery, the FR served a subpoena, pursuant to Federal Rule of Civil Procedure 45, on "Larisa Markus, c/o Victor A. Worms." App'x at 84. The subpoena requested twenty-one categories of documents related to Markus's United States entities and assets, commanded production by July 9, 2019, and, by its instructions, applied "to all documents that [Markus], or any of [her] present or former agents, attorneys, assigns, consultants, employees, and/or successors possess, control or can access in the ordinary course of business." *Id.*

---

[3] The related Chapter 15 case against Foreign Economic Industrial Bank, Ltd., No. 16-13534, had been pending in the United States Bankruptcy Court for the Southern District of New York since 2016.

6

at 91. Worms made no effort to obtain responsive documents and instead moved to quash the subpoena on July 9, 2019, arguing that the subpoena is "predicated upon a Recognition Order which is null and void." *Id.* at 74.

The FR thereafter requested a discovery conference on the motion to quash, which the bankruptcy court held on July 23, 2019. At the conference, Worms maintained the position that discovery should be delayed until the court ruled on his motion to vacate the Recognition Order. The bankruptcy court overruled Worms's objection, and ordered that Worms meet and confer with the FR regarding the subpoena and produce all non-privileged documents requested therein. *See* Supp. App'x at 35 ("Unless you have a good-faith basis to assert privilege, attorney-client privilege, you're going to produce the documents."). Worms represented to the bankruptcy court that he would comply, but he ultimately made no production, asserting that he had no responsive documents in his possession.

By order dated July 30, 2019 (the "Production Order"), the bankruptcy court denied Worms's motion to quash the subpoena and ordered him to "immediately communicate with Markus and her agents, including attorneys, to obtain and produce responsive documents . . . to [the] extent the

7

documents are in Markus' possession, custody, or control." Sp. App'x at 59. The bankruptcy court also required Markus and Worms to complete production of all responsive documents "to the extent the documents are in their possession, custody, or control" by August 15, 2019. *Id.* at 59-60. On August 7, 2019, the bankruptcy court, upon consent of the FR, granted Worms's request for an extension to September 4, 2019, but warned him: "If you don't comply with orders I've entered, you do so at your own risk. And that risk is the risk of imposing sanctions." Supp. App'x at 77; *see also id.* at 84 ("I'm going to start imposing sanctions if you disregard what I'm saying now.").

Worms produced no documents by the deadline. On September 4, 2019, in a written response to the subpoena, Worms objected to Request No. 1 "as exceeding the limited scope of discovery provided for under Chapter 15," and stated that "[t]here are no documents responsive to" the remaining twenty requests. App'x at 118-24. At a hearing on September 9, 2019, the FR explained to the bankruptcy court that Worms claimed that Markus had no responsive documents in her possession "because she's in jail," and that Worms believed neither he nor Markus had "a duty to" obtain and produce responsive documents in the possession of Markus's agents. *Id.* at 147. Worms also argued, for the first

time, that he understood the scope of the subpoena to be "territorially limited" to documents within the United States. *Id.* at 207. Although the Production Order had directed Worms to "immediately communicate with Markus and her agents, including attorneys, to obtain and produce responsive documents," Sp. App'x at 59, it was apparent that Worms had not done so, as he did not know -- "one way or the other" -- whether they had any responsive documents, App'x at 208-09. The bankruptcy court rejected Worms's arguments as inconsistent with the Production Order's clear mandate "to obtain and produce responsive documents . . . in Markus' possession, custody, or control," *id.* at 208, and concluded that Worms was "stonewall[ing]" discovery, *id.* at 209. After confirming that Worms had not complied, to any degree, with its Production Order, the bankruptcy court advised the FR to "[b]ring a motion for contempt." *Id.*

### C.    *The FR's Motion for Sanctions*

On September 11, 2019, the FR accordingly filed a motion for sanctions against Worms and Markus pursuant to Federal Rules of Civil Procedure 37 and 45. In addition to seeking attorneys' fees and costs, the FR requested that the bankruptcy court impose civil contempt sanctions against Worms in the amount of $1,000 per day -- "until he contacts all known Markus

9

agents, including attorneys, and produces responsive documents" -- pursuant to the bankruptcy court's "inherent power to enforce compliance with [its] lawful orders through civil contempt." *Id.* at 117 (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). The FR submitted as an exhibit to its sanctions motion a chart listing thirty-one known agents of Markus -- fourteen of whom were in the United States -- and provided their contact information. Worms opposed the motion and cross-moved for sanctions against the FR.

On October 3, 2019, the bankruptcy court held a hearing on the contempt motion. Worms still had not produced any documents in response to the subpoena. Although Worms claimed that he had written to Markus's attorneys outside the United States and that they had refused to turn documents over to him, he provided no detail and presented no evidence showing that he had indeed taken any steps to comply with the subpoena. Worms also raised new grounds for his refusal to comply with the subpoena, including that the bankruptcy court lacked personal jurisdiction over Markus and that Markus lacked authority over her agents to require them to turn over responsive documents. After hearing from both parties, the bankruptcy court advised that it would "enter an order imposing monetary sanctions on Mr. Worms" because he

10

had "demonstrated throughout willful disregard of this Court's two discovery orders issued nearly two months ago" and because Worms had been warned previously "that sanctions might be levied against him for failure to comply with this Court's orders." *Id.* at 309.

The bankruptcy court issued an order (the "Sanctions Order") five days later, on October 8, 2019, imposing sanctions "based on Mr. Worms' failure to comply with discovery orders issued by this Court," in the amount of $1,000 per day since his noncompliance with the September 4 discovery deadline, for a total of $34,000, plus $1,000 per day going forward if Worms continued to fail to comply. Sp. App'x at 62. The bankruptcy court followed the Sanctions Order with a memorandum opinion, which summarized Worms's failure to comply with the Court's July 30 Production Order and its oral order on August 7, 2019, to produce "all non-privileged documents responsive to the Subpoena." *See In re Markus*, 607 B.R. 379, 388 (Bankr. S.D.N.Y. 2019) ("*In re Markus I*"), *aff'd in part, vacated in part, remanded sub nom. Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020). The bankruptcy court found Worms's violations of these discovery orders to be knowing, willful, and intentional. *See id.* at 384. The court rejected Worms's contention that Rule 45's subpoena power is limited to the production of

11

documents located within the United States, *id.* at 389, and concluded that sanctions were appropriate pursuant to Rule 37 and the "court's inherent power to hold a party in civil contempt," *id.* at 392, 395. On October 16, 2019, the same day that the bankruptcy court issued its memorandum opinion, Worms appealed the Sanctions Order to the district court.

On motion by the FR, the bankruptcy court subsequently awarded $60,000 in attorneys' fees "against Worms personally in connection with the [FR's] preparation of the Sanctions Motion, reply and argument of that motion" (the "Fees Order"). Sp. App'x at 89. The Fees Order did not identify the authority pursuant to which the fees were awarded, although it referenced the bankruptcy court's opinion issued in connection with the Sanctions Order, which discussed at length the court's inherent contempt power as an applicable source of authority. On November 12, 2019, Worms appealed the Fees Order to the district court.

D. **Worms's Appeals to the District Court**

In the district court, Worms argued that the bankruptcy court lacked authority to impose the sanctions against him; he also challenged the amounts set by the bankruptcy court. On April 3, 2020, the district court issued a decision

12

affirming in part, vacating in part, and remanding for limited reconsideration of both orders. *See Markus v. Rozhkov*, 615 B.R. 679, 715, 717 (S.D.N.Y. 2020) ("*Rozhkov I*"). As to the Sanctions Order, the district court affirmed the bankruptcy court's factual findings that Worms failed to comply with its discovery orders "without justification" and held that the imposition of sanctions was proper pursuant to the bankruptcy court's inherent authority. *Id.* at 707, 710-11. Indeed, the district court found that (1) Worms was on notice that the bankruptcy court might impose sanctions pursuant to its inherent authority; (2) Worms admitted that the bankruptcy court had such inherent authority; and (3) the record supported imposition of civil contempt sanctions pursuant to this authority. Accordingly, the district court affirmed the imposition of prospective per diem sanctions for Worms's continued noncompliance since the Sanctions Order (but remanded for consideration of the appropriate amount) and vacated the $34,000 in "lump-sum retroactive sanctions" as an improper criminal sanction. *Id.* at 714-15.

With respect to the Fees Order, the district court recognized that the bankruptcy court did not specify whether it imposed the award as an exercise of discretion pursuant to its inherent authority, or to comply with Rule 37. The

13

district court held that because Worms was not sanctionable pursuant to Rule 37, reliance on the latter would have been improper. Accordingly, the district court vacated the Fees Order and remanded to the bankruptcy court for clarification as to its source of authority. *Id.* at 717.

On remand, the bankruptcy court held that Worms was no longer in contempt as of November 27, 2019, when Ilya Bykov, an agent of Markus based in the United States, contacted Markus's agents and requested that they produce all documents, information, and communications responsive to the subpoena. *See In re Markus*, 619 B.R. 552, 571-72 (Bankr. S.D.N.Y. 2020) ("*In re Markus II*"), *order vacated in part sub nom. Worms v. Rozhkov*, 2021 WL 4124662 (S.D.N.Y. Sept. 9, 2021). Accordingly, the bankruptcy court counted 55 days of contempt -- from October 3, 2019, when the bankruptcy court determined that it would impose civil contempt sanctions against Worms, until November 27, 2019, when Bykov requested documents from Markus's agents -- and ordered per diem sanctions in the amount of $1,000 per day, for a total of $55,000. *Id.* at 572. Bykov's communication with Markus's agents ultimately resulted in the production of 8,666 pages of documents to the FR on January 6, 2020.

As to the Fees Order, the bankruptcy court held explicitly that the award was based on its inherent authority but reduced its amount from $60,000 to $36,600 to discount for the unsuccessful arguments that the FR proffered in his sanctions motion. *Id.* at 574, 578-79. The bankruptcy court also awarded the FR, as he had requested, an additional $63,500 for the legal fees incurred when defending the contempt sanctions on appeal before the district court. *Id.* at 579.

Worms thereafter appealed to the district court for a second time, arguing only that the bankruptcy court abused its discretion in awarding the additional $63,500 in attorneys' fees. On September 9, 2021, the district court affirmed the bankruptcy court's inherent authority to award attorneys' fees as sanctions to enforce compliance with its orders but vacated this fees award as beyond the scope of this authority. *See Worms v. Rozhkov*, 2021 WL 4124662, at *5 (S.D.N.Y. Sept. 9, 2021) ("*Rozhkov II*"). The district court reasoned that the bankruptcy court could not award attorneys' fees against Worms with respect to his first appeal because "[a] bankruptcy court generally does not have the power, under its inherent sanctioning authority, to award fees for the conduct of a party on appeal before another court." *Id.* at *3.

Worms filed a notice of appeal to this Court on September 16, 2021, challenging the imposition of $55,000 in contempt sanctions and $36,600 in fees.[4]

*DISCUSSION*

"A district court's order in a bankruptcy case is subject to plenary review, meaning that this Court undertakes an independent examination of the factual findings and legal conclusions of the bankruptcy court." *Goldman, Sachs & Co. v. Esso Virgin Islands, Inc. (In re Duplan Corp.)*, 212 F.3d 144, 151 (2d Cir. 2000). The bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*. *See id.* By contrast, a bankruptcy court's award of sanctions is reviewed for abuse of discretion. *See Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 91 (2d Cir. 2010) ("*Kalikow*"). If a bankruptcy court lacks the authority to impose a particular sanction, the imposition of such a sanction constitutes an error of law, which is "necessarily" an abuse of discretion, and, therefore, demands reversal. *Id.*; *see also Sumski v. Charbono (In re Charbono)*, 790 F.3d 80, 85 (1st Cir. 2015).

---

[4]     Earlier appeals to this Court were dismissed for lack of appellate jurisdiction on June 4, 2020, and March 11, 2021, because the sanctions had not yet "been conclusively determined and reduced to a sum certain." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 95 (2d Cir. 1997).

Worms advances two main arguments on appeal to support vacatur of the Sanctions Order and the Fees Order. First, Worms argues that a bankruptcy court does not have inherent authority to impose civil contempt sanctions. Second, Worms argues that even assuming a bankruptcy court has inherent sanctioning authority, the bankruptcy court here violated his due process rights because it failed to provide sufficient notice as to the authority under which sanctions were imposed. For the reasons set forth below, we are not persuaded by either argument. We conclude that the civil contempt sanctions imposed against Worms were within the scope of the bankruptcy court's discretion and that he had ample notice of the basis and reasons for the imposition of sanctions.

## I.     A Bankruptcy Court's Inherent Contempt Authority

The issue of whether a bankruptcy court has inherent authority to impose sanctions in the context presented here -- non-nominal civil contempt sanctions -- is one of first impression in our Circuit. But "we do not write on a blank slate." *Rosellini v. U.S. Bankr. Ct. (In re Sanchez)*, 941 F.3d 625, 627 (2d Cir. 2019) (per curiam) ("*Sanchez*"). Indeed, as explained below, a bankruptcy court's inherent civil contempt authority is well-supported by existing precedent in

17

analogous contexts, and, in this case, the bankruptcy court made the requisite findings to warrant the imposition of civil contempt sanctions pursuant to its inherent authority.[5]

### A. Applicable Law

Bankruptcy courts possess multiple sources of sanctions authority -- this Worms does not dispute. Rather, Worms argues that inherent authority allows only for the imposition of *non-contempt sanctions*, as opposed to the contempt sanctions at issue in this case, because a bankruptcy court's contempt authority is derived from Section 105(a) of the Bankruptcy Code. This argument, however, is inconsistent with the Supreme Court's decision in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), and this Court's decisions in *Sanchez* and *Kalikow*.

---

[5] Sanctions may be imposed for civil or criminal contempt -- that is, for a contemnor's clear violation or failure to comply with a court's order. *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). Civil contempt aims either to "coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Id.* at 1062 (citation omitted). Criminal contempt, by contrast, is meant to "punish the contemnor and vindicate the authority of the court." *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998). Therefore, "a civil contempt sanction must only be compensatory or coercive, and may not be punitive." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014). Sanctions, of course, may also be imposed in non-contempt situations, such as to police "other conduct which interferes with the court's power to manage its calendar and the courtroom." *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000).

18

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani*, 384 U.S. at 370. Indeed, "it is firmly established that '[t]he power to punish for contempts is inherent in all courts'" and this power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43, 44 (citation omitted); *see also Anderson v. Dunn*, 19 U.S. 204, 227 (1821) ("Courts of justice are universally acknowledged to be vested, *by their very creation*, with power to impose silence, respect, and decorum, in their presence, and *submission to their lawful mandates . . . .*" (emphasis added)). Indeed, on appeal before the district court, Worms conceded this much. *See* Supp. App'x at 197 ("[A] Court has inherent jurisdiction to impose sanctions. I don't dispute that, Judge. I have never disputed a Court's inherent authority to enforce its order.").

Although *Chambers* involved an Article III court, its pronouncements of law were not so limited. Accordingly, in *Sanchez*, we followed our sister circuits and interpreted *Chambers* to stand for the proposition that "inherent sanctioning powers are not contingent on Article III, but rather are, as their name

suggests, inherent in the nature of federal courts as institutions charged with judicial functions." *Sanchez*, 941 F.3d at 627. We held in *Sanchez*, therefore, that "bankruptcy courts, like Article III courts, possess inherent sanctioning powers." *Id.* at 628; *see also Law v. Siegel*, 571 U.S. 415, 420-21 (2014) ("A bankruptcy court . . . may also possess 'inherent power . . . to sanction abusive litigation practices.'" (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 376 (2007))); 2 Collier on Bankruptcy P. ¶ 105.02 (16th ed. 2020) ("The majority of cases conclude that all courts, whether created pursuant to Article I or Article III of the Constitution, have inherent civil contempt power to enforce compliance with their lawful judicial orders, and no specific statute is required to invest a court with civil contempt power."). And, in *Kalikow*, we made clear that a bankruptcy court has inherent contempt authority outside of Section 105(a) of the Bankruptcy Code. *See Kalikow*, 602 F.3d at 96-97 ("The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders. . . . These powers are in addition to whatever inherent contempt powers the court may have." (citation and quotation marks omitted)).

Nonetheless, while this Court has recognized that a bankruptcy court's "inherent sanctioning powers . . . include the power to impose relatively minor non-compensatory sanctions on attorneys appearing before the court in appropriate circumstances," it has not opined "on the outermost bounds of [these] powers, including the[ ] power to impose more substantial punitive sanctions." *Sanchez*, 941 F.3d at 626, 628 (affirming the bankruptcy court's exercise of its inherent authority to impose "relatively minor non-compensatory sanctions," amounting to $1,000, for an attorney's repeated failure to appear and to comply with the court's orders to show cause).[6] In a more recent decision, this Court suggested that the imposition of non-nominal punitive sanctions, amounting to $75,000, pursuant to a bankruptcy court's inherent authority required a factual finding as to the sanctioned litigant's bad faith. *See PHH Mortg. Corp. v. Sensenich (In re Gravel)*, 6 F.4th 503, 516 (2d Cir. 2021) ("*Gravel*") ("In any event, there is no finding of bad faith; so it is dubious that the bankruptcy court could exercise its inherent power to do that which is

---

[6] Although we did not specify in *Sanchez* whether the $1,000 was a contempt or non-contempt sanction, the contemnor and district court assumed that the sanction "was issued under the Bankruptcy Court's Inherent Powers/Civil Contempt Powers." *In re Sanchez*, 2017 WL 2222922, at *1 (E.D.N.Y. May 19, 2017) (alteration adopted), *aff'd*, 941 F.3d 625 (2d Cir. 2019), *and aff'd*, 790 F. App'x 293 (2d Cir. 2019).

21

unavailable under powers expressly defined.").  Both *Sanchez* and *Gravel*,

however, pertained to punitive -- that is, non-compensatory -- sanctions.

We acknowledge that "relatively minor non-compensatory

sanctions," *Sanchez*, 941 F.3d at 628, are not the same as the substantial,

compensatory, and coercive sanctions imposed against Worms here.  But nothing

in *Sanchez* prohibits bankruptcy courts from imposing non-nominal civil

contempt sanctions pursuant to their inherent authority.  Nowhere in *Sanchez* did

the Court say, as Worms argues, that a bankruptcy court's inherent sanctioning

authority was limited to non-contempt sanctions.  In fact, *Sanchez* suggests that

the opposite is true by recognizing that bankruptcy courts, like Article III courts,

possess inherent sanctioning powers, and it is beyond dispute that Article III

courts have inherent contempt authority.  *Id.*; *see also Chambers*, 501 U.S. at 44;

*Anderson*, 19 U.S. at 227.  Just like an Article III court, a bankruptcy court must

have the authority, inherently, to address contemptuous conduct that occurs

before it.

Although we conclude that a bankruptcy court's inherent authority

extends beyond the sanctions imposed in *Sanchez*, this power is by no means

unlimited.  *See Gravel*, 6 F.4th at 516 ("Inherent power is constrained:  it requires

22

'caution' and notice before use[.]" (quoting *Chambers*, 501 U.S. at 50)). For example, a bankruptcy court's exercise of its inherent sanctioning authority "is a last resort for when an express authority is not 'up to the task,'" *id.*, and in so doing, a bankruptcy court may not contravene valid statutory directives and prohibitions, *see Siegel*, 571 U.S. at 421; *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). Nor can the exercise of a bankruptcy court's inherent sanctioning powers be upheld without the court's specific invocation of its inherent authority as the basis for the sanctions. *See Kalikow*, 602 F.3d at 96 ("The Bankruptcy Court's discretion to award sanctions may be exercised only on the basis of the specific authority invoked by that court."). And, as applicable to all courts when invoking their inherent powers, "[a] court must . . . comply with the mandates of due process." *Chambers*, 501 U.S. at 50.

Moreover, the imposition of sanctions under a bankruptcy court's inherent powers may "require[] a specific finding that an attorney acted in bad faith," supported by "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin.*

*Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (citations omitted). But a court need not always find bad faith before sanctioning pursuant to its inherent powers. *See United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000) ("When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in 'the . . . conduct of the litigation,' which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith. But, when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power." (citations omitted)). In other words, when an attorney's misconduct falls within her "role as an advocate for . . . her client," as opposed to her role "as an officer of the court," a finding of bad faith is required to sanction pursuant to inherent authority. *Id.* at 40-41; *cf. Sanchez*, 941 F.3d at 628 (requiring no finding of bad faith to sanction attorney for repeated failure to appear).

Finally, when a bankruptcy court imposes civil contempt sanctions specifically, it must also comply with certain other legal principles. For one, "a civil contempt sanction must only be compensatory or coercive, and may not be

24

punitive." *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 144 (2d Cir. 2014) (reversing imposition of a $75,000 civil contempt sanction where the sanction was "for *past* noncompliance[,] provided no compensatory relief," and therefore, was impermissibly punitive). Moreover, "[a] contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995); *see also Taggart v. Lorenzen,* 139 S. Ct. 1795, 1799 (2019) ("[A] court may hold a creditor in civil contempt for violating a [bankruptcy court's] order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct."). Therefore, to demonstrate contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King,* 65 F.3d at 1058.

### B. Analysis

Applying these principles here, we find no abuse of discretion in the bankruptcy court's resort to its inherent sanctioning powers in the circumstances of this case.

25

At threshold, Worms's conduct in this case seems beyond the reach of any express sanctioning authority. *See Gravel*, 6 F.4th at 516 ("Inherent power . . . is a last resort for when an express authority is not 'up to the task.'" (quoting *Chambers*, 501 U.S. at 50)). Worms's conduct did not violate a provision of the Bankruptcy Code; instead, the sanctions imposed against Worms were intended to coerce compliance with a subpoena issued pursuant to Rule 45 of the Federal Rules of Civil Procedure. Therefore, it is unclear whether a bankruptcy court could rely on its authority in Section 105(a) -- which authorizes issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" *the Bankruptcy Code* -- to enforce compliance with the Rule 45 subpoena. 11 U.S.C. § 105(a); *see New Eng. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc., (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003) (Section 105(a) "does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" (citation omitted)). Moreover, unlike Rule 26 and Rule 37 of the Federal Rules of Civil Procedure, Rule 45 has no self-contained enforcement mechanism and relies instead on a district court's inherent contempt authority to enforce compliance. *See* Fed. R. Civ. P. 45(g). Accordingly, because

26

it appears that Worms could not have been sanctioned under any express authority, the bankruptcy court was right to consider its inherent contempt authority.

Nor was the bankruptcy court's exercise of its inherent contempt authority contrary to any provision of the Bankruptcy Code, including Section 105(a). We have already rejected the argument that Section 105(a) is the only source of contempt authority available to bankruptcy courts. *See Kalikow*, 602 F.3d at 96-97 ("The statutory contempt powers given to a bankruptcy court under § 105(a) . . . are 'in addition to whatever inherent contempt powers the court may have.'" (citation omitted)).

Most importantly, the bankruptcy court found all the necessary elements -- that is, a finding of bad faith and satisfaction of the *King* factors -- to order contempt sanctions in the circumstances here, where Worms was acting as an advocate. *See Seltzer*, 227 F.3d at 40 ("[B]ad faith is required when a court imposes attorney's fees as a sanction, or when the court sanctions an attorney for conduct that is integrally related to the attorney's role as an advocate for his or her client."); *see also King*, 65 F.3d at 1058. We address each requirement in turn.

"'Whether a litigant was at fault or acted willfully or in bad faith are questions of fact' and thus are reviewed for clear error." *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 281 (2d Cir. 2021) (alteration adopted and citation omitted). Worms has failed to show any error in the bankruptcy court's conclusion that Worms willfully -- "indeed brazenly" -- disregarded the court's discovery orders. *In re Markus I*, 607 B.R. at 388, 393. Worms's efforts to evade the turnover of documents responsive to the subpoena went far beyond the sort of conduct "that is normally part of the attorney's legitimate efforts at zealous advocacy for the client." *Seltzer*, 227 F.3d at 40. Not only did Worms fail to take any steps to comply with the subpoena's deadline, but he also ignored two court-imposed deadlines without justification, and despite warnings of the risk of sanctions. Even after the bankruptcy court issued a lengthy decision detailing Worms's bad faith conduct and holding him in contempt, Worms took no action to purge his contempt. It was not until *a third party* finally contacted Markus's agents that the bankruptcy court stopped holding Worms in contempt. Moreover, the fact that this third-party communication ultimately led to a production of 8,666 pages of documents to the FR on January 6, 2020 -- nearly six months after the subpoena's initial deadline -- proves the baselessness of

28

Worms's assertion before the bankruptcy court that "[t]here are no documents responsive to" the subpoena. App'x at 119-24. Accordingly, this record firmly supports the bankruptcy court's finding that Worms "knowingly and intentionally" engaged in a "continuous pattern of obstructing legitimate discovery," *In re Markus I*, 607 B.R. at 388, in satisfaction of the bad faith requirement, *see DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (holding that defendants' "conscious disregard of their discovery obligations . . . amount[s] to the bad faith required to impose sanctions").

Nor did the bankruptcy court err in finding that the *King* factors were satisfied. *See* 65 F.3d at 1058 ("[A] movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."). The Production Order clearly and unambiguously required Worms to "immediately communicate with Markus and her agents . . . to obtain and produce responsive documents," Sp. App'x at 59, and yet, Worms did not do so, *see* App'x at 208-09 (Worms admitting that he did not know, "one way or another," whether Markus's foreign agents had any documents responsive to the subpoena). Nor did Worms

29

"diligently attempt[] to comply in a reasonable manner," *King*, 65 F.3d at 1058, as he refused to even contact Markus's agents in the United States, let alone any of Markus's foreign agents, to obtain responsive documents, *see* App'x at 306-07. Accordingly, because there is "no fair ground of doubt" as to Worms's deliberate and repeated failure to comply with the bankruptcy court's orders, *Taggart*, 139 S. Ct. at 1799, the bankruptcy court did not abuse its discretion in determining that civil contempt sanctions were appropriate and in imposing them against Worms.

## II. Due Process

Worms argues that the bankruptcy court violated his due process rights by failing to provide notice that civil contempt sanctions would be imposed against him pursuant to the court's inherent authority. This argument, we conclude, is without merit.

### A. Applicable Law

"[D]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996). "[T]he notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the

sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Jeffrey Sapir v. 60 E. 80th St. Equities, Inc. (In re 60 E. 80th St. Equities, Inc.)*, 218 F.3d 109, 117 (2d Cir. 2000); *see also Kalikow*, 602 F.3d at 96 ("[W]e have found it 'imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power.'" (quoting *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997)).

## B.     Analysis

There is no question that Worms had sufficient -- indeed, abundant -- notice of the "specific conduct" for which sanctions would be considered.  Even before the FR filed its sanctions motion on September 11, 2019, Worms received repeated warnings from the bankruptcy court that he was at risk of being sanctioned for failing to comply with the court's discovery orders.[7]

Worms was also on notice that sanctions could be imposed against him pursuant to the bankruptcy court's inherent authority.  Worms argues that

---

[7]     On August 7, 2019, the bankruptcy court warned Worms, "[i]f you don't comply with orders I've entered, you do so at . . . the risk of imposing sanctions."  Supp. App'x at 77; *see also id.* at 84 ("I'm going to start imposing sanctions if you disregard what I'm saying now.").  And at a hearing on September 9, 2019, after Worms admitted that he had still not produced any documents to comply with the Production Order, the bankruptcy court told Worms that he had repeatedly "stonewalled" discovery and "shield[ed] responsive documents" in contravention of the court's orders, and thereafter, the court advised the FR to "[b]ring a motion for contempt."  App'x at 209.

31

the FR's motion for sanctions relied almost entirely on the bankruptcy court's authority under Federal Rules of Civil Procedure 37 and 45, and that the FR's citation to *Shillitani* for the proposition that "[t]here can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt," App'x at 116-17, is insufficient to satisfy the notice requirement. It unclear whether this reference to inherent power in the FR's motion, without more, provides sufficient notice as to the "source of authority for the sanctions being considered." *In re 60 E. 80th St.*, 218 F.3d at 117. But we need not decide this issue because the record, taken as a whole, shows clearly that Worms had notice that the bankruptcy court imposed civil contempt sanctions pursuant to its inherent authority.

The purpose of the notice requirement is to allow "the subject of the sanctions motion [to] prepare a defense." *Id.* Here, Worms defended himself against the exercise of the bankruptcy court's inherent authority in two separate appeals to the district court, on remand before the bankruptcy court, and on appeal before this Court. This record of briefings and proceedings proves that Worms's lack-of-notice claim is empty. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 526-27 (2d Cir. 1990) (holding that it "stretches the imagination" to

32

argue that the sanctioned party did not have notice following multiple rounds of briefing and two appeals to the district court); *see also Fed. Trade Comm'n v. Rensin*, 687 F. App'x 3, 7 (2d Cir. 2017) (summary order) (holding that sanctioned party "received the process that he was due" where the record showed that he "briefed and argued his position before the district court, this Court, and then again before the district court on remand").[8]

When issuing the Sanctions Order, the bankruptcy court analyzed, at length, the standards for imposing civil contempt sanctions against Worms, *see In re Markus I*, 607 B.R. at 394-97, and made clear that sanctions were appropriate against him pursuant to the "court's inherent power to hold a party in civil contempt," *id.* at 395. Although the Fees Order did not "specify" whether the bankruptcy court relied on its inherent authority or Rule 37 to award attorneys' fees, *Rozhkov I*, 615 B.R. at 717, the Fees Order referenced the bankruptcy court's inherent contempt authority by incorporating the court's already-issued memorandum opinion regarding the Sanctions Order. Therefore, at the time of

---

[8]    This record of briefing, argument, and appeals before three different courts also establishes that Worms had ample opportunity to respond and present evidence in opposition to the FR's motion for sanctions. *See In re 60 E. 80th St.*, 218 F.3d at 117 ("The opportunity to respond is judged under a reasonableness standard:  a full evidentiary hearing is not required; the opportunity to respond by brief or oral argument may suffice.").

33

his first appeal to the district court, Worms knew well that the bankruptcy court rested the civil contempt sanctions against him on its inherent authority. Worms, nonetheless, chose to challenge the Sanctions Order and the Fees Order before the district court by arguing that the bankruptcy court could not impose civil contempt sanctions against him pursuant to its inherent authority. And he did so despite previously conceding that "[t]here is no dispute . . . that a Court has inherent jurisdiction to impose sanctions," and that he has "never disputed a Court's inherent authority to enforce its order[s]." Supp. App'x at 197. On remand, Worms again maintained that bankruptcy courts lack inherent authority to impose sanctions, outside of Section 105(a) of the Bankruptcy Code, even though the district court had clearly rejected this argument on appeal.

The entirety of Worms's defense against sanctions, at all stages of this case, rested on his claim that bankruptcy courts lack inherent contempt authority -- an argument that was not well-supported by prior case law and that we now explicitly reject. But this was of Worms's own doing. Before three separate courts, Worms had the opportunity to challenge the factual and legal basis for the sanctions imposed against him. Each time, Worms made the decision not to challenge the bankruptcy court's finding on willfulness, resorting

34

instead to arguments about the court's lack of inherent authority to impose civil contempt sanctions. And each time, Worms failed to identify any error of law or abuse of discretion in the bankruptcy court's conclusions as to contempt. Worms, therefore, received all the process that he was due.[9]

\* \* \*

In sum, we hold that a bankruptcy court's inherent sanctioning authority includes the power to impose civil contempt sanctions in non-nominal amounts to compensate an injured party and coerce future compliance with the court's orders. We also hold that when, as here, a bankruptcy court imposes civil

---

[9] On appeal to this Court, Worms also argues that the district court erred by remanding with respect to the Fees Order for the bankruptcy court to clarify whether it relied on inherent authority or Rule 37 in awarding attorneys' fees. Because this challenge to the Fees Order was not presented in the courts below, it is waived on appeal. *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011) ("Arguments raised for the first time on appeal are deemed waived."). In any event, this argument is meritless. Worms misconstrues our decision in *Sakon* as *requiring* vacatur of a court's sanctions order if the order itself fails to specify the source of authority. But *Sakon* does not go so far. *See* 119 F.3d at 113 ("[A] court's failure to cite any authority for its imposition of sanctions 'by itself *might* well be sufficient *to warrant a remand*.'" (citation omitted) (emphasis added)). We reversed the district court's sanction order in *Sakon* after concluding that (1) the sanctions authority the order relied on to award costs was inapplicable; (2) the court's factual findings foreclosed the requisite finding of bad faith; and (3) the death of the sanctioned litigant made it impossible to grant an opportunity to be heard. *Id.* at 113-15. Worms's circumstances are substantially distinct, as inherent authority is applicable, Worms does not challenge the court's finding as to willfulness, and he has had ample opportunity to be heard. Thus, the district court was not required to reverse the Fees Order and did not abuse its discretion in remanding.

35

contempt sanctions pursuant to its inherent authority for the misconduct of an attorney acting on behalf of a litigant (that is, in his role as an advocate), the court must find that the attorney acted willfully or in bad faith and that the *King* factors have been established. The bankruptcy court must also provide notice and an opportunity to be heard. Because the bankruptcy court made these requisite findings and complied with the mandates of due process when imposing $55,000 in per diem sanctions and $36,600 in attorneys' fees pursuant to its inherent authority, Worms has failed to show anything close to an abuse of discretion.

### *CONCLUSION*

For the reasons set forth above, the bankruptcy court's imposition of civil contempt sanctions against Worms in the amounts of $55,000 (for 55 days of noncompliance with the court's discovery orders) and $36,600 (for attorneys' fees the FR incurred in connection with its sanctions motion before the bankruptcy court) were proper. Accordingly, we AFFIRM the orders of the district court.